## LIGGETT & MEYERS TOBACCO COMPANY ET AL. v. CARLTON, M. GOSLIN.

[No. 13, April Term, 1932.]

*Decided June 3rd, 1932.*

The cause was argued before BOND, C. J., URNER, AD-KINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Roszel C. Thomsen,* with whom were *Walter L. Clark* and *V. Calvin Trice* on the brief, for the appellants.

*William D. Gould, 3rd,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Carlton M. Goslin, the appellee in this case, a resident of Dorchester County, Maryland, on August 26th, 1927, while employed as a traveling salesman by Liggett & Meyers To-bacco Company of New York City, was severely injured as the result of an accident arising out of and in the course of that employment.

Liggett & Meyers Tobacco Company, one of the appellants, at the time of the accident had offices in New York, in Wil-mington, Delaware, and in Baltimore, Maryland. Prior to the accident, its agents in Wilmington, by a contract of em-ployment made at that place, engaged Goslin as a traveling salesman to work in the counties of Cecil and Kent in Mary-land and the county of Newcastle in Delaware. In the course of his employment he made his headquarters at Elkton, Maryland, but transacted all business with his employer through the Wilmington office, except that he was paid by checks sent from appellants' New York office. The accident in which he was injured occurred at Glasgow, Delaware, and at that time his average weekly wage was twenty-five dollars.

On February 28th, 1930, he filed with the State Industrial Accident Commission of Maryland, under Code, art. 101, against Liggett & Meyers Tobacco Company, his employer, a

claim for permanent partial disability. Thereupon, the employer and the American Mutual Liability Insurance Company, insurer, asked that the case be set for a hearing to determine the following issues:

"1. Whether the claimant at the time of his injury was covered by the Workmen's Compensation Law of the State of Maryland.

"2. Whether the employer and insurer were prejudiced by the failure of the complainant to file his claim and physician's report within thirty days after the beginning of his disability as required by law.

"3. Whether the claimant elected to make his claim against the employer and insurer under the laws of the State of Delaware.

"4. Whether the claimant elected to make his claim against the employer and insurer under the laws of the State of New York."

The case was heard, and at the conclusion of the hearing the commission found for the employer on the first issue and disallowed the claim. That decision was reversed on appeal to the Circuit Court for Dorchester County, and from the judgment of that court reversing it, this appeal was taken.

In addition to what has been stated, it also appeared at the hearing before the commission that when Goslin was "first hurt" he "took the matter up with" his employer, and that for about two months they sent him his pay check as though he were still working for them, and that then a representative of the insurance company came to see him. Goslin talked to him about compensation, told him where he was hurt, and where employed, and after that the insurance company "started paying" him compensation at the rate of $16.67 per week, and for a while paid all his expenses. During that period Goslin employed James A. McAllister, Esq., a member of the bar practicing at Cambridge, to represent him, and on November 10th, 1928, McAllister addressed a letter to the insurer in reference to further compensation. As a result of that and other negotiations, the insurer paid to Goslin $445, and took from him the following release:

"American Mutual Liability Insurance Company of
Boston
"File No. 27 WC 26818B—400.
"New York, N. Y., Dec. 31, 1928.
"Received from Liggett & Myers Co., employer, Four
hundred forty-five (445) dollars and 00 cents being
advance final payment made by said employer under
the provisions of the Workmen's Compensation Law to
C. M. Goslin, employee, for compensation on account
of disability resulting from injury sustained by em-
ployee on 8-27-27 at Glasgow, Delaware.
"Evelyn N. Jones.            C. M. Goslin."

The payment was made by draft in the following form:
"To Central Union Trust Company
"Forty-Second Street Branch,
"New York, N. Y.
"Dec. 31, 1928.
"Through the New York Clearing House
"Pay the Sum of Four Hundred forty five dollars
only———Dollars
"To the order of C. M. Goslin,
"In payment of amount due under the Workmen's
Compensation Act for period From Final            to
, Both Dates inclusive. Lump Sum.
"Employer Liggett & Meyers Co.
"Date of Injury 9—27—27.
"Policy No. 27—WC—26818B.
"Accident No. 400.
"For American Mutual Liability Insurance Co.
"Boston, Mass.   .
"Account No. 2.
"Wm. H. Steinenck.            E. M. Garby.
"Counter Signature."

On the reverse side of check appears the following:
"Endorsement of this Draft is an acknowledgment
that the amount indicated thereon equals the com-
pensation due me for the period stated on the reverse
side.
"C. M. Goslin, Payee's Signature."

It also appeared that on November 22nd, 1928, the appellee filed a claim for compensation with the Bureau of Workmen's Compensation, Department of Labor, of the State of New York, and it may be inferred that the settlement which was made was made with reference to the New York proceeding, as there was at that time no proceeding pending in Maryland, or, as far as the record shows, in any other state.

The case was tried in the Circuit Court for Dorchester County upon the theory that the appeal to that court presented but a single issue, to wit, "Was the accident to the claimant covered by the Workmen's Compensation Law of the State of Maryland?" and the order of the commission was reversed because of its finding on that issue. But the appeal allowed by the statute, Code, art. 101, sec. 56, as amended by Acts 1927, ch. 587, is not from the findings or opinion of the commission but from its "decision." And by "decision" is obviously meant the order by which it disposes of the case. If, upon an appeal from its decision, it should appear that it was right and proper, it should be affirmed, even though it also appeared that the findings of the commission were erroneous. For example, in this case it may well have been that the order of the commission disallowing the claim was just and correct and within its powers because of the delay in filing the claim (Acts 1931, ch. 339), and in that event its order should have been affirmed, even though its finding that the case was not covered by the Maryland Workmen's Compensation Act was erroneous.

But as the case was tried in the lower court upon the issue we have stated, and since neither that court nor the commission was asked to determine the other issues, it will be assumed that they are out of the case, and that by the consent of both parties that it is to turn upon that question alone.

At the conclusion of the case in the Circuit Court for Dorchester County, the employer and insurer offered five prayers, of which four were in one form or another demurrers to the evidence, and the fifth sought to accomplish a like result by directing a verdict upon the finding of facts which were conceded. The theory upon which all of these prayers rest is

that, since the contract was not made in this state, and that since the injury did not occur therein, that it is not compensable under the Maryland Workmen's Compensation Act. The appellee rests his claim upon Code, art. 101, sec. 32, and especially upon subsection 43. That section provides in part that: "Compensation provided for in this article shall be payable for injuries sustained * * * by employees engaged in the following extra-hazardous employments. * * * All salesmen * * * employed to solicit orders from customers outside of the establishment for which they are employed, who are citizens or residents of this State, employed by a person, firm or corporation having a place of business within this State, whether the injury for which compensation is asked was sustained within this State or elsewhere: Provided, however, if an employee * * * shall have received compensation or damages under the laws of any other State, nothing herein contained shall be construed so as to permit a total compensation for the same injury greater than is provided for in this Article." The appellants, however, assert that, if susceptible of the construction which the claimant places upon it, that statute is discriminatory, in conflict with section 2, clause 1, article 4, of the Constitution of the United States, and section 1 of the Fourteenth Amendment thereof, and article 23 of the Declaration of Rights of Maryland, and therefore null and void, but that properly construed it applies to accidents happening outside of the state only when the contract of employment was made within the state, and that in either event it furnishes no support to the appellee's claim, because in his case the contract of employment was made without the state.

The relevancy of the due process clause of the Fourteenth Amendment of the Federal Constitution and article 23 of the Declaration of Rights of Maryland are not involved because of the construction given the act, and need not be discussed. Appellants based their attack on the constitutionality of the act mainly upon section 2, clause 1, article 4 of the Federal Constitution, which provides that the "citizens of each state shall be entitled to all privileges and immunities of citizens in the several states," and section 1 of the Fourteenth Amend-

ment thereof. An examination of the act fails, however, to disclose any conflict with those particular provisions of the Constitution. Its scope is confined to "citizens and residents" of this state, but the word "residents" coupled with the word "citizens" is sufficient to expand the class defined by the section so as to include not only citizens of this state but citizens of every other state who may be resident therein. The apparent and obvious purpose and intent of the act, as manifest in that section, is to extend its benefits not only to citizens of the state who may in fact for the time be residing elsewhere, but to all persons resident in the state, whether citizens or not. It takes away no privilege or immunity from any person, but it does extend its benefits to all, whether citizens of the state or not, who are within its reason and purpose. That purpose was to protect capital and labor, employer and employee, and the State, against the waste and distress incident to modern industry under the law as it was when legislation of that character began to take form; the employer against the hazards and expense of litigation, the employee against the operation of harsh rules of law which severely restricted his right to recover, for injuries arising out of and in the course of his employment, and the State from the expense of maintaining and caring for the helpless human wreckage found in the trail of modern industry. *Brenner v. Brenner,* 127 Md. 192, 96 A. 287; *Solvuca v. Ryan & Reilly Co.,* 131 Md. 278, 101 A. 710. Giving due weight to that reason and purpose, there seems to be no valid reason why the State should not extend the benefits of the act to all persons over whom it has jurisdiction, and the act does neither more nor less than that. Since the act could have no extraterritorial effect, the State could not have extended it so as to include persons who were neither citizens nor residents of the state, for over such persons it would have had no jurisdiction. Discrimination implies the deprivation of some right, privilege, or immunity, which injures one entitled thereto, but it is not easy to see how this act discriminates against any one in that sense. Employers who maintain a place of business in the state are expressly within its terms; if they have no such

place there is no reason why they cannot bring themselves within its terms, if they so desire, by complying with that requirement. Employees employed beyond the state under a contract of employment made beyond the state, and who do not reside therein, are not injured by the act, since it does not and could not apply to them at all, and since the State as an incident of its sovereignty is burdened with the care of its own citizens and as well the citizens of other states who may be residing therein, when by casualty, disease, or poverty they cannot care for themselves, the classification rests upon a sound and reasonable foundation.

A different result was reached in the case of *Quong Ham Wah Co. v. Industrial Accident Commn.*, 184 Cal. 26, 192 P. 1021, by construing the word "resident" as meaning "citizen," and holding that a provision which restricted the jurisdiction of the commission in controversies arising out of injuries suffered beyond the state, to cases where the injured employee was a resident of the state and the contract of employment was made within the state, was an unlawful discrimination against the citizens of other states. No authority in point was cited in support of that opinion, which is criticized in 12 *A. L. R.* 1207, note, and we are unable to accept the reasoning upon which the conclusion of the court was based. It is not every discrimination made by a state in favor of its own residents that is obnoxious to the constitutional provision, but on the contrary the right of the states to make such discrimination where there is a sound and reasonable basis for it has been repeatedly sustained. For instance, such discrimination has been recognized as valid in statutes regulating the practice of law (*Keeley v. Evans* [D. C.], 271 Fed. 520, appeal dismissed 257 *U. S.* 667, 42 S. Ct. 184, 66 L. Ed. 426), the right to vote or hold office (*Ward v. Morris & Nicholson,* 4 H. & McH. 330, 340), the right to hunt and fish (*In re Eberle* [C. C.], 98 Fed. 295), the issuance of attachments (*Campbell v. Morris,* 3 H. & McH. 535), requiring non-residents to give security for costs (*Haney v. Marshall,* 9 Md. 194), and limiting the right to sell intoxicating liquor to residents (*DeGrazier v. Stephens,* 101 Tex. 194, 105 S. W.

992), as not infringing the right of the citizens of each state to the full enjoyment of the privileges and immunities of citizens of the several states. For those words as used in the Constitution have a special and limited meaning. In *Campbell v. Morris, supra,* it is said:

"By taking a retrospective view of our situation antecedent to the formation of the first general government, or the confederation, in which the same clause is inserted *verbatim,* one of the great objects must occur to every person, which was the enabling the citizens of the several states to acquire and hold real property in any of the states, and deemed necessary, as each state was a sovereign independent state, and the states had confederated only for the purpose of general defence and security, and to promote the general welfare.

"It seems agreed, from the manner of expounding, or defining the words immunities and privileges, by the counsel on both sides, that a particular and limited operation is to be given to these words, and not a full and comprehensive one. It is agreed it does not mean the right of election, the right of holding offices, the right of being elected. The court are of opinion it means that the citizens of all the states shall have the peculiar advantage of acquiring and holding real as well as personal property, and that such property shall be protected and secured by the laws of the state, in the same manner as the property of the citizens of the state is protected. It means, such property shall not be liable to any taxes or burdens which the property of the citizens is not subject to. It may also mean, that as creditors, they shall be on the same footing with the state creditor, in the payment of the debts of a deceased debtor. It secures and protects personal rights."

And while that case was reversed on appeal, for reasons which are not given, that statement of the law has never been questioned and is in substantial accord with the more expanded definition in U. S. Code Ann., Const., part 2, page 371 *et seq.,* which digests a number of cases decided in the Supreme Court, and in different state appellate courts. The effect of the statute under consideration here is to say to an

employee: "If you live in this state or are a citizen thereof, and are employed under a contract made in this state by an employer doing business therein, and in the course of your employment you are injured beyond the state, you are entitled to compensation, but if you do not live in this state or are not a citizen thereof, then under like conditions you are not entitled to compensation under this act. Such a classification seems to be neither arbitrary nor unreasonable, but rather in harmony with the limitations and restrictions of the law." The State could not impose its will upon an employee who neither resided in it nor was a citizen of it, but the want of that power should not take from it the right to impose its will upon employees who are within its jurisdiction, when the public welfare demands such action.

Passing from the validity to the meaning of the section, it is clear that it is not broad enough to support appellee's claim. Upon the facts of his case the contract of employment was made beyond the state, and he was injured as the result of an accident which occurred beyond the state, and in the course of an employment which placed him beyond the state at the place where the accident occurred. The statute was evidently never intended to reach any such case, for under a construction which would allow a claim for compensation under such circumstances, an employer in any other state who kept a place of business of any kind in this state could be subjected to the provisions of the act even though the contract of employment was not made in this state, the employment was not to be performed in this state, and the accident did not occur therein. No such illogical and impossible purpose could have been intended, first, because the State would have been powerless to enforce any such provisions, and, again, because such a result is foreign to the manifest purpose and spirit of the legislation.

When, therefore, it says "employed by a person, firm or corporation having a place of business within this state," the act necessarily refers to a contract made in this state by such person, firm, or corporation. *Restatement, Conflict Laws, A. L. I.* 438; *Schneider, Workmen's Compensation,* sec. 47; *Re*

*Gould*, 215 Mass. 480, 102 N. E. 693. While there is some authority to support the proposition that, where there is sufficient statutory authority, compensation may be collected in the state where the contract of employment was made, or in the state where the injury occurred, there seems to be none for the contention that it may be enforced in any state other than those. *Schneider, Workmen's Compensation*, sec. 47.

There was error therefore in refusing appellants' first and second prayers, and for that reason the judgment of the Circuit Court for Dorchester County must be reversed, and the decision of the commission affirmed.

> *Judgment of the Circuit Court for Dorchester County reversed, and the decision of the State Industrial Accident Commission of Maryland, disallowing appellee's claim, affirmed, with costs to the appellants.*