847 A.2d 1190

**MAYOR AND CITY COUNCIL OF BALTIMORE CITY**

v.

**Ernest A. JOHNSON.**

**No. 01061, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

April 23, 2004.

---

4. No argument is made that the three offenses are not part of a unit of charges.

Herbert Burgunder, Jr., William R. Phelam, Jr., Baltimore, for Appellant.

Paul D. Bekman (Gregory G. Hopper, Salsbury, Clements, Bekman, Marder & Adkins, LLC on the brief), Baltimore, for Appellee.

Panel: HOLLANDER, KRAUSER, CHARLES E. MOYLAN, JR., (Retired, specially assigned) JJ.

HOLLANDER, Judge.

■ A retired firefighter who is also disabled as a result of an occupational disease is entitled under the Maryland Workers' Compensation Act (the "Act") to collect both service pension benefits and compensation benefits, in a sum not to

exceed the firefighter's weekly salary. *Polomski v. Mayor and City Council of Baltimore*, 344 Md. 70, 684 A.2d 1338 (1996). In this appeal, we must determine whether a firefighter's surviving, dependent spouse is similarly entitled to collect both service related pension benefits and workers' compensation benefits when the firefighter's death results from an occupational disease. Resolution of the case requires us to construe several provisions of the Labor and Employment Article ("L.E.") of the Maryland Code (1991, 1999 Repl.Vol., 2003 Supp.).

Ernest Johnson, appellee,[1] a Baltimore City fireman, died from colon cancer, a compensable occupational disease under L.E. § 9–503(c). Mr. Johnson's widow, Jesse Johnson, collects his service pension benefits. Because of Mr. Johnson's status as a public safety employee, Mrs. Johnson claims that, pursuant to L.E. § 9–503(e), she is also entitled to collect workers' compensation benefits, so long as the total amount does not exceed Mr. Johnson's average weekly wage at the time of his death. The Workers' Compensation Commission (the "Commission") agreed with Mrs. Johnson.

Thereafter, the Mayor and City Council of Baltimore (the "City" or the "Employer"), appellant, appealed to the Circuit Court for Baltimore City. Relying on L.E. § 9–610, the City claimed that its payment of the pension benefits, in a sum greater than the compensation benefits, satisfied the City's obligation with regard to payment of workers' compensation benefits. The circuit court disagreed. This appeal followed, in which the City asks:

> Did the lower court err in ruling that the offset provision in [L.E.] § 9–503(e) applies to the receipt of benefits by the surviving dependents of a deceased firefighter?

For the reasons that follow, we shall reverse and remand.

---

1. Although Ernest Johnson is deceased, the parties refer to him as the appellee. We shall do the same.

## FACTUAL SUMMARY

Mr. Johnson worked as a Baltimore City firefighter for thirty-two years. In connection with his duties, he was routinely exposed to heat, smoke, noxious fumes, and toxic substances. In January 1993, while still employed as a fireman, Mr. Johnson was diagnosed with colon cancer. He succumbed to that illness on March 11, 1994. At the time of his death, Mr. Johnson earned an average weekly wage of $989.75. The parties agree that Mrs. Johnson was wholly dependent upon her husband, and that Mr. Johnson's cancer constituted an occupational disease under L.E. § 9–503(c).

As a result of Mr. Johnson's death, his widow received a service pension benefit of $603.90 per week from the City's pension system. *See* Baltimore City Code (2003), Art. 22, § 34(h). On February 13, 1998, Mrs. Johnson filed a Workers' Compensation claim,[2] which the City initially contested. At a hearing held by the Commission on December 10, 2002, Mrs. Johnson was the only witness. She testified that her husband joined the Fire Department in September 1961; in January 1993, while Mr. Johnson was still employed with the Fire Department, he was diagnosed with colon cancer; and he died from that illness on March 11, 1994.

Appellee introduced in evidence a letter from Dr. Stephen Glasser, a doctor of internal medicine, oncology, and hematology, who reviewed Mr. Johnson's medical records in 2002. Dr. Glasser opined that, to "a reasonable degree of medical probability ... Mr. Johnson's malignancy was directly related to his [lengthy] occupational exposure ... to the carcinogenic products of fire particularly during the earlier years of inadequate protection."

---

**2.** Mrs. Johnson claimed that she did not file the claim until 1998 because she did not know that she had the right to do so. In proceedings before the Commission, the Subsequent Injury Fund, which was impleaded by the City, raised the issue of the statute of limitations. The Fund is not a party to this appeal, nor has the City pursued the issue of limitations.

In an Order dated December 24, 2002, the Commission found that the claimant died from an occupational disease arising out of and in the course of employment. Further, it ruled that Mrs. Johnson, the "spouse of the deceased employee, was totally dependent" upon Mr. Johnson at the time of his death. It also determined that Mrs. Johnson receives $603.90 per week from the City's pension system, and that Mr. Johnson earned an average weekly wage of $989.75 when he died. However, it deferred ruling on the issue of "what set off provision applies."

Thereafter, the City asked the Commission to address the question of the set off. In an Order dated January 31, 2003, the Commission determined "that the appropriate set off provision in this case is [L.E. § ] 9–503(e)." In all other respects, the Commission affirmed its Order of December 24, 2002.

The City subsequently appealed to the circuit court, where the parties filed cross-motions for summary judgment that were heard on June 30, 2003. The circuit court filed a Memorandum and Opinion on July 3, 2003, in which it granted appellee's summary judgment motion and denied the City's summary judgment motion. It also issued two orders, both dated July 2, 2003; one denied the City's motion and the other granted appellee's motion.

In its opinion, the circuit court rejected the City's contention that the dependents of firefighters are subject to the offset provision generally applicable to government employees, found in L.E. § 9–610. In its view, the Employer's position was at odds with the purpose of L.E. § 9–503 and the Act. The court reasoned that, by enacting L.E. § 9–503, "the Legislature intended to recognize and grant special consideration to those government employees, such as firefighters, who are engaged in and subjected to hazardous work." Moreover, the court believed that "the Legislature intended that the special benefits provided to public safety employees pursuant to [L.E.] § 9–503 be enjoyed and used for the benefit of the employee's dependants as well." Because appellee was

entitled under the Act to recover dual benefits while he was alive, the court deemed it "inconsistent" to award benefits to certain public service employees while alive and sick, and then terminate those benefits to the dependants when the public service employee dies from the very disease that was acquired during the course of the employment."

## DISCUSSION

### I.

The parties vigorously dispute whether Mrs. Johnson is entitled to receive a combination of both workers' compensation benefits and pension benefits. But, there is much about which they do agree. For example, they agree that colon cancer is a type of "rectal cancer" within the scope of L.E. § 9–503(c), and that Mr. Johnson died from that occupational disease. Moreover, there is no dispute about appellee's average weekly wage, the rate of workers' compensation benefits, or the amount of pension benefits that Mrs. Johnson receives from the City. Nor does Mrs. Johnson contend that any recovery of combined benefits can exceed appellee's average weekly wage at the time of his death.

To understand the parties' various contentions, which we discuss at length, *infra,* it is helpful to begin with a review of the relevant provisions of the Act.[3]

**Section 9–501.   Accidental personal injury.**

(a) *In general.*—Except as otherwise provided, each employer of a covered employee shall provide compensation in accordance with this title to:

(1) the covered employee for an accidental personal injury sustained by the covered employee;  or

---

**3.** Appellant cites the provisions as they appear in the 2003 Supplement of the Code. Although that precise language was not necessarily in effect at the time of Mr. Johnson's death or when the Commission or the circuit court ruled, any differences are not material with respect to the issue presented here. Therefore, we shall cite to the current statutory text.

(2) the dependants of the covered employee for death of the covered employee:

(i) resulting from an accidental personal injury sustained by the covered employee; and

(ii) occurring within 7 years after the date of the accidental personal injury.

(b) *Employer liable regardless of fault.*—An employer is liable to provide compensation in accordance with subsection (a) of this section, regardless of fault as to a cause of the accidental personal injury.

### § 9–502. Occupational disease—Compensation.

(a) *"Disablement" defined.*—In this section, "disablement" means the event of a covered employee becoming partially or totally incapacitated:

(1) because of an occupational disease; and

(2) from performing the work of the covered employee in the last occupation in which the covered employee was injuriously exposed to the hazards of the occupational disease.

\* \* \*

(c) *Liability of employer and insurer.* Subject to subsection (d) of this section and except as otherwise provided, an employer and insurer to whom this subsection applies shall provide compensation in accordance with this title to:

(1) a covered employee of the employer for disability of the covered employee resulting from an occupational disease; or

(2) *the dependents of the covered employee* for death of the covered employee resulting from an occupational disease.

(d) *Limitation on liability.*—An employer and insurer are liable to provide compensation under subsection (c) of this section only if:

(1) the occupational disease that caused the death or disability:

(i) is due to the nature of an employment in which hazards of the occupational disease exist and the covered employee was employed before the date of disablement; or

(ii) has manifestations that are consistent with those known to result from exposure to a biological, chemical, or physical agent that is attributable to the type of employment in which the covered employee was employed before the date of disablement; and

(2) on the weight of the evidence, it reasonably may be concluded that the occupational disease was incurred as a result of the employment of the covered employee....

(Emphasis added).

L.E. § 9–503 is at the center of this case. In effect, it provides special treatment for certain public safety employees. In regard to firefighters, a person who is a paid firefighter or a volunteer firefighter covered under L.E. § 9–234, and who has a specified occupational disease, including rectal cancer, is legally presumed to have developed the disease in the line of duty. Under certain circumstances, § 9–503(e) permits a public safety employee simultaneously to collect workers' compensation benefits and retirement benefits, up to a maximum that does not exceed the worker's weekly wage. L.E. § 9–503 states, in part:

**§ 9–503. Same—Presumption—Firefighters, fire fighting instructors, rescue squad members, advanced life support unit members, and police officers.**

(a) *Heart disease, hypertension, and lung disease—Firefighters, fire fighting instructors, rescue squad members, and advanced life support unit members.*—A paid firefighter, paid fire fighting instructor, or sworn member of the Office of the State Fire Marshal employed by an airport authority, a county, a fire control district, a municipality, or the State or a volunteer firefighter, volunteer fire fighting instructor, volunteer rescue squad member, or volunteer advanced life support unit member who is a covered employee under § 9–234 of this title is presumed to have an

occupational disease that was suffered in the line of duty and is compensable under this title if:

(1) the individual has heart disease, hypertension, or lung disease;

(2) the heart disease, hypertension, or lung disease results in partial or total disability or death; and

(3) in the case of a volunteer firefighter . . .

(b) *Heart disease or hypertension—Police officers* . . .

(c) *Cancer.*—A paid firefighter, paid fire fighting instructor, or a sworn member of the Office of the State Fire Marshal employed by an airport authority, a county, a fire control district, a municipality, or the State or a volunteer firefighter, volunteer fire fighting instructor, volunteer rescue squad member, or volunteer advanced life support unit member who is a covered employee under § 9–234 of this title is presumed to be suffering from an occupational disease that was suffered in the line of duty and is compensable under this title if the individual:

(1) has leukemia or pancreatic, prostate, *rectal,* or throat cancer that is caused by contact with a toxic substance that the individual has encountered in the line of duty;

(2) has completed at least 5 years of service as a firefighter, fire fighting instructor, rescue squad member, or advanced life support unit member or in a combination of those jobs in the department where the individual currently is employed or serves;

(3) is unable to perform the normal duties of a firefighter, fire fighting instructor, rescue squad member, or advanced life support unit member in the department where the individual currently is employed or serves because of the cancer or leukemia disability; and

(4) in the case of a volunteer firefighter . . .

\* \* \*

(e) *Benefits in addition to retirement benefits.*—(1) Except as provided in paragraph (2) of this subsection, any paid firefighter, paid fire fighting instructor, sworn member

of the Office of the State Fire Marshal, paid police officer, paid law enforcement employee of the Department of Natural Resources, deputy sheriff ... who is eligible for benefits under subsection (a), (b), (c), or (d) of this section *shall receive the benefits in addition to any benefits that the individual is entitled to receive under the retirement system in which the individual was a participant at the time of the claim.*

(2) *The benefits received under this title shall be adjusted so that the weekly total of those benefits and retirement benefits does not exceed the weekly salary that was paid* to the paid law enforcement employee of the Department of Natural Resources, firefighter, fire fighting instructor, sworn member of the Office of the State Fire Marshal, police officer, deputy sheriff, or Prince George's County correctional officer.

(Emphasis added).

L.E. § 9–610 is also central to this case. It states:

### § 9–610. Offset against other benefits.

(a) *Covered employee of governmental unit or quasi-public corporation.*—(1) Except for benefits subject to an offset under § 29–118 of the State Personnel and Pensions Article, *if a statute, charter, ordinance, resolution, regulation, or policy, regardless of whether part of a pension system, provides a benefit to a covered employee of a governmental* unit or a quasi-public corporation that is subject to this title under § 9–201(2) of this title *or, in case of death, to the dependents of the covered employee, payment of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer* and the Subsequent Injury Fund for payment of similar benefits under this title.

(2) If a benefit paid under paragraph (1) of this subsection is less than the benefits provided under this title, the employer, the Subsequent Injury Fund, or both shall provide an additional benefit that equals the difference between the benefit paid under paragraph (1) of this subsection and the benefits provided under this title.

(3) The computation of an additional benefit payable under paragraph (2) of this section shall be done at the time of the initial award and may not include any cost of living adjustment after the initial award.

\* \* \*

(c) *Powers of Commission.*—

(1) The Commission may:

(i) determine whether any benefit provided by the employer is equal to or greater than any benefit provided for in this title; and

(ii) make an award against the employer or the Subsequent Injury Fund or both to provide an additional benefit that equals the difference between the benefit provided by the employer and the benefits required by this title.

(2) A claim that comes under this section is subject to the continuing powers and jurisdiction of the Commission.

(Emphasis added).

L.E. § 9–681 pertains to workers' compensation death benefits. Pursuant to L.E. § 9–681, the death benefit is equal to two-thirds of the average weekly wage of the deceased covered employee. And, under L.E. § 9–681(b), the amount of the benefit cannot exceed the State average weekly wage. L.E. § 9–681 states:

**§ 9–681.   Wholly dependent individuals.**

(a) *In general.—If there are individuals who were wholly dependent on a deceased covered employee* at the time of death resulting from an accidental personal injury or occupational disease, *the employer or its insurer shall pay death benefits in accordance with this section.*

(b) *Amount of death benefit.*—(1)   Except as provided in paragraph (2) of this subsection, the death benefit payable under this section shall equal two-thirds of the average weekly wage of the deceased covered employee, but may not:

(i) exceed the State average weekly wage; or

 (ii) be less than $25.

 (2) If the average weekly wage of the deceased covered employee was less than $25 ...

 (c) *Duration of payment—In general.*—Except as otherwise provided in this section, the employer or its insurer shall pay the weekly death benefit:

 (1) for the period of total dependency; or

 (2) until $45,000 has been paid.

 (d) *Same—Surviving spouse who remains wholly dependent.*—If a surviving spouse who was wholly dependent at the time of death continues to be wholly dependent after $45,000 has been paid, the employer or its insurer shall continue to make payments to the surviving spouse at the same weekly rate during the total dependency of the surviving spouse....

(Emphasis added).

As we noted, Mr. Johnson had an average weekly wage of $989.75 at the time of his death; two-thirds of that amount equals $659.83. However, under L.E. § 9–681, because the State average weekly wage at the time of Mr. Johnson's death was $510, the workers' compensation death benefit is capped at $510. In light of the maximum workers' compensation death benefit of $510, and Mrs. Johnson's receipt of a weekly pension benefit from the City in the amount of $603.90, the City insists that its payment of the pension death benefit payment "completely satisfies ... the City's liability for death benefits under the Workers' Compensation Law." Consequently, it maintains that Mrs. Johnson "is not entitled to any payment beyond the amount of the pension benefit."

To support its position, the City relies on L.E. § 9–610, contending that it "applies 'to *all* employees of governmental units and quasi-public corporations, including, presumably, firefighters.' " (Citation omitted). Under L.E. § 9–610(a)(1), says the City, "a government's payment of a death benefit to the surviving dependents of a deceased employee under a pension plan will offset part or all of the worker's compensation death benefit due to the surviving dependents." As Mr.

Johnson was an employee of a governmental unit, the City claims that the pension death benefit payable to Mrs. Johnson "is subject to § 9–610(a)...."

According to the City, the "only exception to § 9–610 is that provided in § 9–503," which applies to paid public safety employees who are actually alive and "receiving benefits as a result of the effects of an occupational disease specified in § 9–503." The City concedes that, when appellee was alive, he was entitled to both compensation and pension benefits, pursuant to L.E. § 9–503(e), capped at his weekly wage. But, the City argues that the favorable treatment authorized by L.E. § 9–503(e) ends upon a worker's death.

Observing that § 9–503 provides "special, unique benefits to a specific group of employees," appellant maintains that only a *living* public safety employee is entitled to receive both workers' compensation benefits and pension payments. It reasons that L.E. § 9–503(e) constitutes an exception to general workers' compensation law, and insists that it "should not be judicially expanded beyond the extent clearly specified by the legislature, because it is in contradiction to the general legislative purpose in creating the offset provisions for governmental employers."

Appellant looks to the statutory text to support its argument. Noting the absence of any language in L.E. § 9–503 that extends the combined benefits to surviving dependents, the City claims that Mrs. Johnson is not entitled to recover dual payments. The City states: "The plain language of the statutory provisions makes it clear that § 9–503 does not allow the Appellee to receive dual benefits, even though Mr. Johnson could have done so prior to his death." Appellant adds:

> In the present case, there is no language in § 9–503 providing for the receipt of both pension and workers' compensation benefits, capped only by the amount of the deceased employee's weekly wage, by the surviving dependents of a deceased employee. The language of § 9–503 is clear and unambiguous. Therefore, there is no reason to go

beyond the clear language to determine the legislative intent.

* * *

Therefore, while retired public safety employees may simultaneously receive pension and workers' compensation benefits limited only by the amount of their weekly wage, their surviving dependents may not, because § 9–503 does not include an exception to the limitations imposed by § 9–610.

Appellee presents equally cogent arguments, all to the contrary. Distilled to its essence, appellee contends that Mrs. Johnson's benefits "are subject to the cap in the public safety employee section, not the offset provision for government employees." Appellee relies on the principles of statutory construction and the salutary purpose of the Act to support the contention that L.E. § 9–503(e) applies to Mrs. Johnson.

According to appellee, the Legislature carved out certain professions involved in public safety, including firefighters, as deserving of special protection. In appellee's view, when "the Legislature carved out these exceptions for firefighters, it also carved out an exception to the general off-set provision for government employees," codified in § 9–503(e). In light of the Legislature's recognition of the increased risks to which firefighters are exposed, appellee argues that the statutory text of § 9–503(e) must be construed to permit firefighters *and* their surviving dependents to receive a combination of pension and workers' compensation benefits, not to exceed the firefighter's average weekly wage.

Appellee argues that the City's analysis is flawed because, under the City's interpretation of § 9–503(e), "firefighters who die of the listed occupational diseases would be treated the same as any other government employee," and that view is at odds with the Legislature's intent. The City's position, says appellee, overlooks that "the Legislature intended the considerations granted to firefighters to extend beyond their death and for firefighters who suffer or die from the listed occupa-

tional diseases to be given more consideration than other government employees." Appellee explains:

[T]his is because the firefighters were routinely exposed to risks of disability or death "not shared by other government employees."[1] Given the background of the Act and subsection (c), it strains credibility to suggest that the Legislature intended for firefighters who suffer and ultimately dies [sic] from one of the listed occupational diseases to receive less consideration than firefighters who develop the condition and survive.

(Footnote omitted).

While appellee acknowledges that § 9–503(e) does not specifically "reference the dependents of the firefighters" who die from covered diseases, appellee nonetheless insists that the provision must be read "in context." Appellee contends that the City's position ignores the language of L.E. § 9–503(a), (b), and (c), as well as the statutory scheme as a whole. Considering the statutory purpose, appellee maintains that the benefits extended under § 9–503(a) through (d) "are incorporated into subsection (e) by reference," because "subsection (e) is part of a larger compensation system" that "recognizes the fundamental connection between occupational diseases and death."

Claiming "that the dependent of a covered employee stands in the employee's shoes," appellee states:

The Act generally accepts that covered employees who develop occupational diseases may die, it requires employers to compensate the surviving dependents of these employees, and it treats the surviving dependents as the living representatives of the deceased employees. Subsection (e) ... does incorporate by reference the subsections discussing the entitlement of firefighters to receive [combined] compensation if they develop or die from a listed occupational disease.

## II.

The issue here is whether L.E. § 9–503(e) extends to a surviving, dependent spouse of a deceased firefighter who

died from an occupational disease recognized by L.E. § 9–503(c). The Commission's decision in favor of appellee carries a prima facie presumption of correctness. L.E. § 9–745(b); *Martin v. Beverage Capital Corp.*, 353 Md. 388, 402, 726 A.2d 728 (1999); *Gleneagles, Inc. v. Hanks*, 156 Md.App. 543, 550, 847 A.2d 520, 2004 WL 829035, *3 (2004). Nevertheless, "a reviewing court has broad authority and may reverse the Commission's decision when it is based on an erroneous conception of the law." *Board of County Comm'rs v. Vache*, 349 Md. 526, 537, 709 A.2d 155 (1998); *see Mona Elec. Services, Inc. v. Shelton*, 148 Md.App. 1, 5, 810 A.2d 1022 (2002); *Henville v. Southwest Airlines, Inc.*, 142 Md.App. 79, 86, 788 A.2d 210 (2002); *Globe Screen Printing Corp. v. Young*, 138 Md.App. 122, 128, 770 A.2d 1064, *cert. denied*, 365 Md. 268, 778 A.2d 383 (2001). As the question raised by the parties is a legal one, we must analyze it in light of the Act as a whole and the principles of statutory construction.

Maryland was the first state in the country to adopt a workers' compensation statute. *Harris v. Board of Education*, 375 Md. 21, 28, 825 A.2d 365 (2003)(citing Ch. 139 of the Acts of 1902). The current version of the Act dates to 1914. *See* Chapter 800 of the Acts of 1914; *Temporary Staffing, Inc. v. J.J. Haines & Co.*, 362 Md. 388, 397, 765 A.2d 602 (2001); *Polomski v. Mayor and City Council of Baltimore*, 344 Md. 70, 76, 684 A.2d 1338 (1996). In its present form, the Act entitles a covered employee to recover compensation benefits for an occupational disease [4] or an accidental injury that arises out of and in the course of employment. *See* L.E. §§ 9–101(b); 9–501, 9–502; *see Livering v. Richardson's Restaurant*, 374 Md. 566, 573–74, 823 A.2d 687 (2003); *Means v. Baltimore County*, 344 Md. 661, 664, 689 A.2d 1238 (1997);

---

4. L.E. § 9–101(e)(1) defines "compensation" as "the money payable under this title to a covered employee or the dependents of a covered employee." In *Victory Sparkler & Specialty Co. v. Francks*, 147 Md. 368, 379, 128 A. 635 (1925), the Court defined an occupational disease as "one which arises from causes incident to the profession or labor of the party's occupation or calling. It has its origin in the inherent nature or mode of work of the profession or industry, and it is the usual result or concomitant."

*Barnes v. Children's Hosp.,* 109 Md.App. 543, 553, 675 A.2d 558 (1996).

■■■ The Act constitutes a " 'comprehensive scheme to . . . provide sure and certain relief for injured [workers], their families and dependents regardless of questions of fault.' " *Hastings v. Mechalske,* 336 Md. 663, 672, 650 A.2d 274 (1994) (citations omitted); *see Breitenbach v. N.B. Handy Co.,* 366 Md. 467, 474, 784 A.2d 569 (2001); *Waters v. Pleasant Manor Nursing Home,* 361 Md. 82, 104, 760 A.2d 663 (2000); L.E. § 9–102(b). As the Court of Appeals recently reiterated, "[t]he Act essentially is remedial, social legislation designed to protect workers and their families from various hardships that result from employment-related injuries." *Livering,* 374 Md. at 574, 823 A.2d 687. Compensation is made "for loss of earning capacity, regardless of fault, resulting from accidental injury, disease, or death occurring in the course of employment." *DeBusk v. Johns Hopkins Hosp.,* 342 Md. 432, 437, 677 A.2d 73 (1996); *see Ametek, Inc. v. O'Connor,* 364 Md. 143, 154, 771 A.2d 1072 (2001); *Philip Electronics North America v. Wright,* 348 Md. 209, 215–16, 703 A.2d 150 (1997).

■■■ "Compensation awarded on this fault-free basis under the statutory plan substitutes for an employee's common law right to bring a fault-based tort suit against an employer for damages resulting from the employee's injury. . . ." *DeBusk,* 342 Md. at 438, 677 A.2d 73; *see Belcher v. T. Rowe Price Foundation, Inc.,* 329 Md. 709, 736, 621 A.2d 872 (1993). Therefore, under L.E. § 9–509(a), compensation pursuant to the Act is ordinarily an injured employee's exclusive remedy with respect to the employer. *The Great Atl. & Pac. Tea Co., Inc. v. Imbraguglio,* 346 Md. 573, 578, 697 A.2d 885 (1997). Because of the exclusivity provision of the Act, an employer is usually immune from an employee's suit for work-related injuries. *Imbraguglio,* 346 Md. at 578, 697 A.2d 885; *Hastings,* 336 Md. at 672, 650 A.2d 274; L.E. § 9–509(a).

The Act was conceived to protect workers and their families, among others. *See Waters,* 361 Md. at 104, 760 A.2d 663; *Martin v. Beverage Capital Corp.,* 353 Md. 388, 398, 726 A.2d

728 (1999). But, as the Court of Appeals has explained several times, including in *Polomski,* 344 Md. at 76, 684 A.2d 1338, "[a]lthough the Act's name suggests that it was intended solely for the benefit of employees, the preamble to the 1914 Act, and, indeed, [the Court's] previous holdings, reveal otherwise." The Court has made clear that, "[i]n reality, the Act protects employees, employers, and the public alike." *Id.* at 76, 684 A.2d 1338; *see Waters,* 361 Md. at 104, 760 A.2d 663. The *Polomski* Court explained:

> To be sure, the Act maintains a no-fault compensation system for employees and their families for work-related injuries where compensation for lost earning capacity is otherwise unavailable. *See Bethlehem–Sparrows Point Shipyard v. Damasiewicz,* 187 Md. 474, 480, 50 A.2d 799 (1947); *Paul v. Glidden Co.,* 184 Md. 114, 119, 39 A.2d 544 (1944). At the same time, however, the Act also recognizes the need to protect employers from the unpredictable nature and expense of litigation, and the public from the overwhelming tax burden of "caring for the helpless human wreckage found [along] the trail of modern industry." *Liggett & Meyers Tobacco Company v. Goslin,* 163 Md. 74, 80, 160 A. 804 (1932); *Brenner v. Brenner,* 127 Md. 189, 192, 96 A. 287 (1915). *See* Ch. 800 of the Acts of 1914; *see also Belcher v. T. Rowe Price,* 329 Md. 709, 736–37, 621 A.2d 872 (1993). In other words, the Act provides employees suffering from work-related accidental injuries, regardless of fault, with a certain, efficient, and dignified form of compensation. In exchange, employees abandon common law remedies, thereby relieving employers from the vagaries of tort liability. *Belcher,* 329 Md. at 736, 621 A.2d 872 (*citing* 1 Arthur Larson, *The Law of Workmen's Compensation,* § 1.20 at 2 (1992)).

*Id.* at 76–77, 684 A.2d 1338 (Footnote omitted).

Thus, the *"quid pro quo"* for absolute but limited compensation, unrelated to fault, is that employers are "relieved of the prospect of large damage verdicts often associated with litigation." Arthur Larson, *The Law of Workmen's Compensation,* § 100.01, at 100–2. This inures to the benefit of the employ-

ers by enabling them to avoid "the disruption of business by burdensome lawsuits." *Central GMC, Inc. v. Lagana,* 120 Md.App. 195, 204, 706 A.2d 639 (1998).

Since its enactment, "the Act has gone through several revisions, reflecting both changes in societal attitudes, workplace realities, and, of course, political compromises." *Polomski,* 344 Md. at 76, 684 A.2d 1338. At its inception, the Act excluded coverage for occupational diseases; it provided compensation only to employees who were injured in workplace accidents. *Harris,* 375 Md. at 29, 825 A.2d 365. By 1939, however, the Legislature recognized that accidents are not the only cause of injury to employees. *Polomski,* 344 Md. at 77, 684 A.2d 1338. Therefore, pursuant to Chapter 465 of the Acts of 1939, "certain occupational diseases" were, for the first time, "deemed compensable if contracted during the course of employment." *Polomski,* 344 Md. at 77, 684 A.2d 1338. As a result, employees who were disabled or killed as a result of "specific enumerated occupational diseases" were deemed eligible for compensation benefits " 'as if such disablement or death were an injury by accident.' " *Id.* (quoting Ch. 465. § 32B of the Acts of 1939).

By 1951, "the practice of enumerating specific diseases" in the Act was "abandoned," and all occupational diseases suffered during the course of employment were "deemed compensable," subject to certain conditions not pertinent here. *Polomski,* 344 Md. at 77–8, 684 A.2d 1338. But, as with accidental injuries, the claimant had the burden of proving the occupational nature of the disease or condition. *Id.* at 78, 684 A.2d 1338.

Then, in 1971, some thirty years after the Act was amended to permit compensation for occupational diseases, the General Assembly amended the Act again, "grant[ing] a presumption of compensability in favor of certain classes of fire fighters suffering from heart or lung disease, or hypertension." *Id. See* Chapter 695 of the Acts of 1971. Similarly, the Legislature adopted what is now L.E. § 9–503(c), which provides that

a firefighter who develops leukemia, pancreatic cancer, prostate cancer, rectal cancer, or throat cancer is presumed to have done so as a result of his employment. These enactments reflect the Legislature's view that firefighters are "susceptible to diseases formerly not recognized as occupational." *Polomski*, 344 Md. at 78, 684 A.2d 1338. In 1972, the Act was further extended to afford similar protections to certain categories of police officers. *See* Ch. 282 of the Acts of 1972.

With this framework, we return to the issue before us. Although we have not uncovered any Maryland case directly on point, *Polomski* is of interest, because it concerned a retired and disabled firefighter's attempt to recover dual benefits under L.E. § 9–503. While the case is not controlling, in that it did not address the question of a surviving spouse's entitlement to combined benefits, it is helpful to review it.

After working as a firefighter for more than thirty years, Polomski obtained a "time-earned" service retirement, from which he received $564.35 per week. *Id.* at 73, 684 A.2d 1338. Soon thereafter, pursuant to L.E. § 9–503, Polomski also sought workers' compensation benefits, based on a variety of work-related ailments, including hypertension and heart disease. *Id.* The Commission awarded Polomski compensation benefits of $451 per week. *Id.* at 74, 684 A.2d 1338. The combined pension and compensation benefits substantially exceeded Polomski's average weekly salary of $676.32. On appeal to the circuit court, the City did not challenge the worker's right to dual benefits. Instead, the City argued that, under the express terms of L.E. § 9–503(d)(2) (now § 9–503(e)(2)), the total payment to the firefighter could not exceed the worker's salary. Therefore, the City maintained that Polomski's compensation benefits had to be limited to $111.97. *Id.* The circuit court upheld the Commission. *Id.* at 75, 684 A.2d 1338. Agreeing with the City that Polomski's combined total benefits could not exceed his weekly wage, we reversed. *Id.*

Unhappy with the reduction of his compensation award, Polomski sought *certiorari*. In the Court of Appeals, he argued that the offset provision in former L.E. § 9–503(d)(2) "only applies when workers' compensation benefits and retirement benefits are the result of the same disabling event." *Id.* at 79, 684 A.2d 1338. Because his retirement benefits were service-related, paid to him "by virtue of age and length of service," *id.*, Polomski claimed he was "entitled to the full measure of both workers' compensation benefits and retirement benefits, without reduction or offset." *Id.* The Court disagreed. *Id.*

The Court considered whether former § 9–503(d)(2), the predecessor to what is now L.E. § 9–503(e)(2), required the "reduction of workers' compensation benefits for a disability caused by an occupational disease paid to a retired fire fighter who is also receiving retirement benefits under a service pension plan." *Id.* at 73, 684 A.2d 1338. Significantly, the Court took no issue with the firefighter's recovery of dual benefits. But, the Court made clear that payment of such dual benefits "shall be adjusted" so that the weekly total of the retirement benefits and workers' compensation benefits "does not exceed the weekly salary that was paid to the … firefighter." *Id.* at 82, 684 A.2d 1338. It observed, *id.* at 84, 684 A.2d 1338:

> [T]he clear language of § 9–503(d)(2) [now § 9–503(e)(2) ] negated the need to look elsewhere for its meaning. The section specifically and unambiguously requires that Polomski's workers' compensation benefits be reduced to the extent that, when combined with his retirement benefits, the sum does not exceed his weekly salary. If [the statute] is to be amended to require a setoff against only "similar benefits," that amendment must come from the General Assembly, not this Court. Polomski's workers' compensation benefits must accordingly be reduced.

Under *Polomski*, L.E. § 9–503(e) permits a retired, disabled firefighter suffering from an occupational disease to collect compensation benefits and service pension benefits, capped at the amount of the worker's salary. But, § 9–503(e)

contains no corresponding language authorizing payment of combined benefits to a firefighter's surviving, dependent spouse. In contrast, § 9–610(a)(1) specifically states that compensation benefits paid by a governmental unit to a covered employee, "or, in the case of death, to the dependents of the covered employee," shall be offset by payment of any governmental pension benefits.

Resolution of the dispute presented here leads us directly to the principles of statutory construction. The seminal tenet of statutory construction compels us to ascertain and effectuate the legislative intent. *Consolidated Constr. Servs., Inc. v. Simpson*, 372 Md. 434, 456, 813 A.2d 260 (2002); *Liverpool v. Baltimore Diamond Exchange, Inc.*, 369 Md. 304, 316, 799 A.2d 1264 (2002); *Mayor & City Council of Baltimore v. Chase*, 360 Md. 121, 128, 756 A.2d 987 (2000); *see also State v. Bell*, 351 Md. 709, 717, 720 A.2d 311 (1998); *Rouse–Fairwood Development Ltd. Ptshp. v. Supervisor of Assessments for Prince George's County*, 138 Md.App. 589, 618, 773 A.2d 535 (2001).

The interpretation of a statute is a judicial function. *Muhl v. Magan*, 313 Md. 462, 481–82, 545 A.2d 1321 (1988). The statutory text is our starting point. *See Huffman v. State*, 356 Md. 622, 628, 741 A.2d 1088 (1999); *State v. Pagano*, 341 Md. 129, 133, 669 A.2d 1339 (1996). Generally, we give the words of the statute their "ordinary and common meaning within the context in which they are used." *Polomski*, 344 Md. at 75, 684 A.2d 1338; *see Waters*, 361 Md. at 103, 760 A.2d 663; *Lewis v. State*, 348 Md. 648, 653, 705 A.2d 1128 (1998). In other words, to determine the ordinary meaning of a term or word used in a statute, "it is imperative" that we consider "the context." *Waters*, 361 Md. at 103, 760 A.2d 663. To achieve that objective, we must incorporate "the overall purpose of the statute into its interpretation." *Id.*

When the statutory language is "clear on its face and in its context, then we do not ordinarily need to turn to the Legislative history." *Waters*, 361 Md. at 103, 760 A.2d 663. In contrast, when the statute is ambiguous, we ordinarily consid-

er the language "in light of the . . . objectives and purpose of the enactment." *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75, 517 A.2d 730 (1986). In this regard, "we may . . . consider the particular problem or problems the legislature was addressing, and the objectives it sought to attain." *Sinai Hosp. of Baltimore, Inc. v. Department of Employment & Training*, 309 Md. 28, 40, 522 A.2d 382 (1987).

To the extent "reasonably possible," we read a statute so "that no word, phrase, clause, or sentence is rendered surplusage or meaningless." *Mazor v. State Dep't of Correction*, 279 Md. 355, 360, 369 A.2d 82 (1977); *see Eng'g Mgmt. Servs., Inc. v. Md. State Highway Admin.*, 375 Md. 211, 224, 825 A.2d 966 (2003); *Motor Vehicle Admin. v. Lytle*, 374 Md. 37, 61–2, 821 A.2d 62 (2003); *Mayor & Council of Rockville v. Rylyns Enters., Inc.*, 372 Md. 514, 551, 814 A.2d 469 (2002). Moreover, when the statute is part of a general statutory scheme or system, " 'all sections must be read together . . . to discern the true intent of the legislature.' " *Breitenbach*, 366 Md. at 472, 784 A.2d 569 (citation omitted); *Vest v. Giant Food Stores, Inc.*, 329 Md. 461, 466–67, 620 A.2d 340 (1993); *Mazor*, 279 Md. at 361, 369 A.2d 82; *Ball v. Univ. of Maryland*, 137 Md.App. 229, 232, 768 A.2d 105 (2001); *Buskirk v. C.J. Langenfelder & Son, Inc.*, 136 Md.App. 261, 269, 764 A.2d 857 (2001); *Uninsured Employers' Fund v. Pennel*, 133 Md.App. 279, 293, 754 A.2d 1120 (2000). Therefore, we must not examine the provisions of the statute as if they are "isolated, independent sections." *Waters*, 361 Md. at 104, 760 A.2d 663.

In our effort to effectuate the Legislature's intent, we may consider " 'the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense.' " *Chesapeake Charter, Inc. v. Anne Arundel County Bd. of Educ.*, 358 Md. 129, 135, 747 A.2d 625 (2000) (citation omitted). Moreover, "absurd results in the interpretive analysis of a statute are to be shunned." *Rylyns*, 372 Md. at 550, 814 A.2d 469.

As we consider the statutory scheme and the specific provisions that are at issue here, we are mindful of the broad social and remedial purposes that undergird the Act. *Belcher,* 329 Md. at 737, 621 A.2d 872. We also take note of the legislative directive that "[t]he title shall be construed to carry out its general purpose." L.E. § 9–102(a). Therefore, it must "be construed as liberally as possible in order to comply with the legislative command, contained in § 9–102(a)...." *Porter v. Bayliner Marine Corp.,* 349 Md. 609, 616, 709 A.2d 1205 (1998); *see Keystone Masonry Corp. v. Hernandez,* 156 Md. App. 496, 511–12, 847 A.2d 493, 2004 WL 829038, at *8 (2004). Moreover, in regard to workers' compensation cases, the Legislature has expressly rendered inapplicable the general rule that "a statute in derogation of the common law is to be strictly construed...." L.E. § 9–102(b).

Because the Act's "core values ... have never been abandoned," *Polomski,* 344 Md. at 76, 684 A.2d 1338, the "benevolent objective of workers' compensation statutes is the polar principle in determining the rights of the parties." *Central GMC, Inc. v. Lagana,* 120 Md.App. 195, 205, 706 A.2d 639, *cert. granted,* 350 Md. 280, 711 A.2d 871, *appeal dismissed,* 351 Md. 160, 717 A.2d 384 (1998). Indeed, the Act's provisions are liberally construed in favor of claimants in order to effectuate its benevolent purposes. *Livering,* 374 Md. at 574, 823 A.2d 687. Consequently, ambiguities or uncertainties in the Act are generally resolved in favor of a claimant. *Id.; Ametek,* 364 Md. at 154, 771 A.2d 1072; *Philip Electronics,* 348 Md. at 217, 703 A.2d 150; *Para v. Richards Group of Washington Ltd. Partnership,* 339 Md. 241, 251, 661 A.2d 737 (1995).

Nevertheless, regardless of our sympathies, we may not "stifle the plain meaning of the Act, or exceed its purposes, [just] so that the injured worker may prevail." *Philip Electronics,* 348 Md. at 217, 703 A.2d 150; *see Morris v. Board of Educ. of Prince George's County,* 339 Md. 374, 384, 663 A.2d 578 (1995). This means that we may not create "ambiguity or uncertainty in the Act's provision where none

exists so that a provision may be interpreted in favor of the ... claimant." *Philip Electronics*, 348 Md. at 217, 703 A.2d 150; *see Ametek*, 364 Md. at 155, 771 A.2d 1072; *Porter*, 349 Md. at 616–17, 709 A.2d 1205; *Tortuga, Inc. v. Wolfensberger*, 97 Md.App. 79, 83, 627 A.2d 56, *cert. denied*, 332 Md. 703, 632 A.2d 1209 (1993). Simply put, we may not add or delete words so as " 'to give the statute a meaning not otherwise communicated by the language used.' " *Harris v. Board of Educ. of Howard County*, 375 Md. 21, 31, 825 A.2d 365 (2003) (citation omitted); *see Clarence W. Gosnell, Inc. v. Hensley*, 156 Md.App. 224, 235, 846 A.2d 469, 2004 WL 742956, at *6 (2004). Nor may we extend coverage "beyond that which is authorized by the provisions of the Act." *Barnes*, 109 Md. App. at 554, 675 A.2d 558; *see Engel & Engel v. Ingerman*, 353 Md. 43, 55, 724 A.2d 645 (1999) (discussing attorneys' fees in workers' compensation cases and stating that when " 'the language of the statute is plain and clear and expresses a meaning consistent with the statute's apparent purpose, no further analysis is ordinarily required.' ") (Citation omitted).

■■■ Moreover, we cannot ignore that the Act " 'reflects the Legislature's considered judgment as to the appropriate allocation of resources between employers, employees, and the taxpayers of this State.' " *Ametek*, 364 Md. at 157, 771 A.2d 1072 (citation omitted). Although the Act is "remedial in nature," and " 'should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes,' " *Philip Electronics, supra*, 348 Md. at 216, 703 A.2d 150 (citation omitted), it is equally true that "the Act has a purpose broader than serving the interests of employers and their employees ... The needs and expectations of society, in addition to those of the work force, come into play." *Belcher*, 329 Md. at 737, 621 A.2d 872.

L.E. § 9–678 provides that, in regard to employees who die from an occupational disease, their dependents are entitled to compensation benefits in accordance with the subtitle. L.E. § 9–681(a) states: "If there are individuals who were wholly dependent on a deceased covered employee at the time of

death resulting from an accidental personal injury or occupational disease, the employer or its insurer shall pay death benefits in accordance with this section." The text of that section is in marked contrast to the text of L.E. § 9–503(e); the latter provision contains no language that expressly permits the payment of combined benefits to a surviving dependent of a firefighter who has died from an occupational disease. Surely, if the Legislature intended a surviving dependent to recover dual benefits, it would have said so.[5] Indeed, as the Court observed in *Polomski*, 344 Md. at 83, 684 A.2d 1338, the General Assembly is not obligated "to treat all public employees in relation to their pension and retirement benefits similarly." It follows that the Legislature is not required to treat equally a firefighter and his or her spouse. Rather, the Legislature may have sought to find a balance between compensation to firefighters, in accordance with the presumption, and protection of a municipal employer's "public coffers." *Id.*

Even assuming, *arguendo*, that the Legislature inadvertently omitted the word "dependent" from L.E. § 9–503(e), that would not advance appellee's cause. When " 'an omission in the language of a statute ... appeared to be the obvious result of inadvertence,' " a court may " 'not invade the function of the legislature' by reading missing language into a statute" to correct the error. *Graves v. State*, 364 Md. 329, 351, 772 A.2d 1225 (2001) (citation omitted). *See also Fisher and Utley v. State*, 367 Md. 218, 292, 786 A.2d 706 (2001) (Bloom, J., concurring and dissenting) (stating that courts "may not ...

---

5. We note that, to support its position, the City relies on language in L.E. § 9–503(e) referring to a *"paid* firefighter...." It argues from that language that, because a dead firefighter cannot be "a paid firefighter," the section obviously does not authorize dual payments to a dead firefighter's surviving dependent. In focusing on the word "paid," we believe the City has taken the term out of context. Elsewhere in L.E. § 9–503, the text discusses benefits to both paid public safety officers and volunteer public safety officers. More than likely, the use of the word "paid" in L.E. § 9–503(e) was meant to refer to those individuals who are not volunteers, rather than those who are still alive.

supply missing language when there is a *casus omissus* in the legislative scheme by judicially creating a statutory provision that the legislature would probably have added if it had given any thought to the problem it had not addressed"); *Mutual Life Ins. Co. of New York v. Insurance Comm'r,* 352 Md. 561, 573, 723 A.2d 891 (1999) (recognizing that an appellate court cannot " ' "supply omissions" ' " to a statute " ' "under the guise of construction . . . ." ' ") (citations omitted).

In sum, we discern no ambiguity in L.E. § 9–503(e). Because we cannot graft language onto L.E. §§ 9–503(e) that is not part of that provision, we conclude that the Commission and the circuit court erred in finding that, under L.E. § 9–503(e), Mrs. Johnson is entitled to receive combined compensation and pension benefits.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED TO THE CIRCUIT COURT WITH INSTRUCTIONS TO REMAND TO THE WORKERS' COMPENSATION COMMISSION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**