40 A.3d 475

**Felix L. JOHNSON, Jr., Deceased**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE.**

No. 1707, Sept. Term, 2010.

Court of Special Appeals of Maryland.

March 29, 2012.

674

**676**

Paul D. Bekman (Katharine O. Porwick, Salsbury, Clements, Bekman, Marder & Adkins, LLC, on the brief), Baltimore, MD, for appellant.

Herbert Burgunder, Jr. & William R. Phelan, Jr. (George A. Nilson, City Solicitor, Minda F. Goldberg, Baltimore City Department of Law, on the brief), Baltimore, MD, for appellee.

Panel: WRIGHT, KEHOE and ARRIE W. DAVIS, (Retired, Specially Assigned), JJ.

ARRIE W. DAVIS (Retired, Specially Assigned), J.

The following opening remarks by Judge Hollander, writing for this Court in *Mayor & City Council of Baltimore City v. Ernest A. Johnson,* 156 Md.App. 569, 572–73, 847 A.2d 1190 (2004) (footnote omitted), *aff'd,* 387 Md. 1, 874 A.2d 439 (2005), provide an excellent introduction for our discussion in the instant case:

> A retired firefighter who is also disabled as a result of an occupational disease is entitled under the Maryland Workers' Compensation Act (the "Act") to collect both service pension benefits and compensation benefits, in a sum not to exceed the firefighter's weekly salary. *Polomski v. Mayor and City Council of Baltimore,* 344 Md. 70, 684 A.2d 1338 (1996). In this appeal, we must determine whether a firefighter's surviving, dependent spouse is similarly entitled to collect both service related pension benefits and workers' compensation benefits when the firefighter's death results

from an occupational disease. Resolution of the case requires us to construe several provisions of the Labor and Employment Article ("L.E.") of the Maryland Code (1991, 1999 Repl.Vol., 2003 Supp.).

Mrs. Johnson claims that, pursuant to L.E. § 9–503(e), she is also entitled to collect workers' compensation benefits, so long as the total amount does not exceed Mr. Johnson's average weekly wage at the time of his death.

In *Johnson*, the surviving wholly dependent spouse of Ernest Johnson was ruled to be ineligible for dual benefits. The legislative response to the Ernest Johnson case is the starting point for the similar quest for dual benefits by the surviving wholly dependent spouse of another first responder.

This is an appeal by Janice T. Johnson, claimant, from the decision by the Circuit Court for Baltimore City reversing an award of survivor's benefits by a decision of the Workers' Compensation Commission.[1] Claimant seeks the same relief that was denied Mrs. Ernest Johnson in the above-referenced, celebrated case, but avers that the General Assembly has stepped in to remedy deficiencies in the Workers' Compensation Act that led to the denial of dual recovery in the *Ernest A. Johnson* case.[2] We have jurisdiction to consider whether claimant is entitled to collect both the pension for the employee's time of service as well as her survivor's compensation

---

1. The "appellant" is listed in the caption of the briefs as "Felix L. Johnson, Jr.," who is claimant's decedent. We shall refer to Mrs. Johnson as the "claimant," and Mr. Johnson as the employee.

2. Appellant sets forth the following specific argument:
 I. The Circuit Court Improperly Concluded that Lab. and Empl. § 9–503(e) Did Not Apply to the Present Case, Even though Mrs. Johnson's Claim Was Pending at the Time of the 2007 Statutory Amendment.
 A. Lab. and Empl. § 9–503(e) is Remedial.
 B. Lab. and Empl. § 9–503(e)(1) Does Not Create a New Substantive Right.
 C. There is No Indication the General Assembly Intended for the 2007 Amendment to Lab. and Empl. § 9–503 to Apply Prospectively.

**680**

benefits, and thus avoid the effect of the Act's general offset provision.[3] For the reasons set forth below, we shall hold that appellant is not so entitled, because amendments to the provision at issue may not apply retroactively, and we shall therefore affirm the judgment of the circuit court.

## BACKGROUND AND PROCEDURE

The employee, Felix L. Johnson, Jr., served as a firefighter for the City of Baltimore from October 13, 1964 until his retirement on June 9, 1990. On July 2, 1990, the employee and claimant were married. On November 7, 2005, the em-

---

3. At the time of Mr. Johnson's death, the Workers' Compensation Act provided with respect to offsets:

§ 9–610.

(a)(1) Except for benefits subject to an offset under § 29–118 of the State Personnel and Pensions Article, if a statute, charter, ordinance, resolution, regulation, or policy, regardless of whether part of a pension system, provides a benefit to a covered employee of a governmental unit or a quasi-public corporation that is subject to this title under § 9–201(2) of this title or, in case of death, to the dependents of the covered employee, payment of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer and the Subsequent Injury Fund for payment of similar benefits under this title.

(2) If a benefit paid under paragraph (1) of this subsection is less than the benefits provided under this title, the employer, the Subsequent Injury Fund, or both shall provide an additional benefit that equals the difference between the benefit paid under paragraph (1) of this subsection and the benefits provided under this title.

(3) The computation of an additional benefit payable under paragraph (2) of this section shall be done at the time of the initial award and may not include any cost of living adjustment after the initial award.

 * * *

(c)(1) The Commission may:

(i) determine whether any benefit provided by the employer is equal to or greater than any benefit provided for in this title; and

(ii) make an award against the employer or the Subsequent Injury Fund or both to provide an additional benefit that equals the difference between the benefit provided by the employer and the benefits required by this title.

(2) A claim that comes under this section is subject to the continuing powers and jurisdiction of the Commission.

Md.Code (1991, 1999 Repl.Vol., 2005 Supp.), § 9–610 of the Labor & Employment Article ("LE").

ployee died due to a myocardial infarction. Claimant began receiving pension survivorship benefits at the rate of $266.92 per week. On January 10, 2006, claimant filed a dependent's claim for death benefits under the Act. She alleged that the employee's demise from "heart disease resulting in death" was due to the fact that he had been "continuously exposed to heat, smoke, noxious fumes and the product of combustion[.]"

On October 1, 2009, the claim went to a hearing before the Workers' Compensation Commission. On December 4, the Commission awarded benefits to the claimant. This Order was amended on February 26, 2010 to effect a nominal change in the amount of the award. In the Amended Award, the Commission first ruled that the employee sustained an occupational disease and that he died as a result thereof on November 7, 2005. The Commission further ruled that claimant was "wholly dependent" upon the employee for support and also concluded that the "Employer and Insurer are entitled to a set off under Section 9–503 of the Labor Article." [4] The effect of the Commission's application of the specific offset provision set forth in Section 9–503(e) was to enhance claimants total recovery and to avoid the dollar for dollar offset at Section 9–610. *See* Md.Code (1991, 1999 Repl.Vol. 2007 Supp.), §§ 9–503(e), 9–610 of the Labor and Employment Article ("LE" or Act).

---

**4.** The Commission's holding on these issues specifically provides:

The Commission finds on the first issue that the above-named deceased employee sustained an occupational disease (heart disease) arising out of and in the course of employment with a disablement date on July 11, 2005, and as a result thereof, died on November 7, 2005. The Commission finds on the second issue that at the time of the occupational disease and death, the deceased employee left surviving Janice Johnston [sic], widow, who was wholly dependent upon the deceased for support; and the Commission will award compensation for such whole dependency in accordance with Section 9–681 of the Labor Article; and further compensation shall be paid unto Janice Johnston [sic], widow, at the rate previously awarded, if she continues to be wholly dependent. The Commission finds on the third issue that the Employer and Insurer are entitled to a set off under Section 9–503 of the Labor Article. Average Weekly Wage—$625.00[.]

■ The Employer petitioned for judicial review of the Commission's award in the Circuit Court for Baltimore City. *See* Section 9–737 of the Workers' Compensation Act, Md. Code (1999, 2008 Repl.Vol., 2009 Supp.), § 9–737 of the Labor and Employment Article. Both parties filed cross-motions for summary judgment in the circuit court. Md. Rule 2–501. On September 1, 2010, following a hearing on these motions, the court entered summary judgment in favor of the Employer and also denied appellant's motion.[5] This timely appeal followed.

## DISCUSSION

### *Standard of Review*

We recently pointed out that "[a]ppellate scrutiny of a workers' compensation decision depends upon the manner of the circuit court's judicial review of the Commission's decision." *Doe v. Buccini Pollin Grp., Inc.*, 201 Md.App. 409, 419, 29 A.3d 999 (2011). We there cited to "two modalities of judicial review," *viz.* a review on the existing record generated before the Commission and a "new evidentiary hearing and decision before a jury[.]" *Id.* (quoting *Baltimore County v. Kelly*, 391 Md. 64, 67–68, 891 A.2d 1103 (2006)). These approaches are embodied in LE § 9–745, which articulates the manner by which judicial proceedings are to be conducted.[6]

---

**5.** We need not set forth the circuit court's ruling, for, as recently noted by the Court of Appeals, "in judicial review actions of final decisions of administrative agencies, we 'look through' the decisions of the lower courts and review the final decision of the [Commission]." *Kim v. Md. State Bd. of Physicians*, 423 Md. 523, 533 n. 4, 32 A.3d 30 (2011) (citation omitted).

**6.** LE § 9–745 provides:
 (a) The proceedings in an appeal shall:
 (1) be informal and summary; and
 (2) provide each party a full opportunity to be heard.
 (b) In each court proceeding under this title:
 (1) the decision of the Commission is presumed to be prima facie correct; and
 (2) the party challenging the decision has the burden of proof.
 (c) The court shall determine whether the Commission:

▮▮▮▮ In the case before us, the issue was joined and decided on cross-motions for summary judgment. Where the case is in this appellate posture, our review of the circuit court's judgment is plenary, *see Hemmings v. Pelham Wood Ltd. Liab. Ltd. P'ship*, 375 Md. 522, 533, 826 A.2d 443 (2003), because a resolution on summary judgment is one of law, and, as Judge Greene recently pointed out for the Court of Appeals, an appellate court reviews the summary judgment decision of the circuit court "for legal correctness." *Wal Mart Stores, Inc. v. Holmes*, 416 Md. 346, 358, 7 A.3d 13 (2010). *See Muskin v. State Dep't of Assessments and Taxation*, 422 Md. 544, 554–55, 30 A.3d 962 (2011); *Chesek v. Jones*, 406 Md. 446, 458, 959 A.2d 795 (2008); *Doe v. Buccini, supra*, 201 Md.App. at 420, 29 A.3d 999 (review of conclusions of law *de novo* ). Judicial review of agency decisions is constrained. Although we accord due respect for the Commission's interpretation of its organic statute, *see Wal Mart v. Holmes, supra*, 416 Md. at 359, 7 A.3d 13; *cf. Kim v. Maryland State Board of Physicians*, 423 Md. 523, 537, 32 A.3d 30 (2011) (deference to agency interpretation of own regulations), and are mindful that the Commission's decision is "presumed to be *prima facie* correct," LE § 9–745(b)(1); *Kim*, 423 Md. at 536, 32 A.3d 30 "this presumption does not extend to questions of law, which we review independently." *Montgomery County v.*

---

(1) justly considered all of the facts about the accidental personal injury, occupational disease, or compensable hernia;

(2) exceeded the powers granted to it under this title; or

(3) misconstrued the law and facts applicable in the case decided.

(d) On a motion of any party filed with the clerk of the court in accordance with the practice in civil cases, the court shall submit to a jury any question of fact involved in the case.

(c)(1) If the court determines that the Commission acted within its powers and correctly construed the law and facts, the court shall confirm the decision of the Commission.

(2) If the court determines that the Commission did not act within its powers or did not correctly construe the law and facts, the court shall reverse or modify the decision or remand the case to the Commission for further proceedings.

Md.Code (1991, 2008 Repl. Vol., 2010 Supp.), § 9–745 of the Labor and Employment Article.

*Deibler,* 423 Md. 54, 60, 31 A.3d 191 (2011) (citing *Wal Mart v. Holmes, supra,* 416 Md. at 357, 7 A.3d 13).

### *Introduction—First Principles*

■■■■ The fundamental purpose of the Workers' Compensation Act

"is to 'provide employees with compensation for loss of earning capacity, regardless of fault, resulting from accidental injury . . . occurring in the course of employment.'" . . . The Act's principle objective of compensating the injured worker "pursuant to the statutory plan for disabilities which are occupationally related" is its "centerline." *See* RICHARD P. GILBERT & ROBERT L. HUMPHREYS, JR., MARYLAND WORKERS' COMPENSATION LAW, § 2.02 at 2–2 (3d ed.2007).

*Doe v. Buccini, supra,* 201 Md.App. at 420, 29 A.3d 999 (citation omitted). Such legislation is remedial and it is to be "'construed as liberally in favor of the injured employees as its provisions will permit in order to effectuate its benevolent purposes.'" *Deibler,* 423 Md. at 61, 31 A.3d 191 (quoting *Design Kitchen & Baths v. Lagos,* 388 Md. 718, 724, 882 A.2d 817 (2005)). *See Cambridge Mfg. Co. v. Johnson,* 160 Md. 248, 252–53, 153 A. 283 (1931) (articulating "philosophy" of the Act). We likewise recognize that worker's compensation legislation strikes a balance between the competing interests of both employees and employers, *Doe v. Buccini,* 201 Md.App. at 420, 29 A.3d 999 because of the "'need to provide some form of financial benefits to the injured or sick employees and the need, of both employers and employees, to avoid expensive and unpredictable litigation over accidents in the workplace.'" *Sanchez v. Potomac Abatement, Inc.,* 417 Md. 76, 82 n. 4, 8 A.3d 737 (2010) (quoting *DeBusk v. Johns Hopkins Hospital,* 342 Md. 432, 438, 677 A.2d 73 (1996)). *See Polomski v. Mayor & City Council of Baltimore,* 344 Md. 70, 76–77, 83, 684 A.2d 1338 (1996) (noting diverse interests). Nonetheless, courts are enjoined to construe workers' compensation legislation liberally. *See Keystone Masonry Corp. v. Hernandez,* 156 Md.App. 496, 513, 847 A.2d 493 (2004).

*LE §§ 9–502, 9–503—The Occupational Disease Provisions*

██ An "occupational disease" has been defined as "one which arises from causes incident to the profession or labor of the party's occupation or calling. It has its origin in the inherent nature or mode of work of the profession or industry, and it is the usual result or concomitant." [7] *Polomski,* 344 Md. at 78 n. 8, 684 A.2d 1338 (quoting *Victory Sparkler Co. v. Francks,* 147 Md. 368, 379, 128 A. 635 (1925)). Although the Maryland Workers' Compensation Act in roughly its present form dates from 1914, *see* 1914 Md. Laws Chap. 800, the first occupational disease provisions did not appear in the Statute until May 24, 1939, when they were added to the Maryland Workmen's Compensation Act.[8] 1939 Laws of Maryland, Chap. 465. *See* J. Nicholas Shriver, Jr., *The Maryland Occupational Disease Law,* 4 MD. L.REV. 133, 135, 139 (1940). *See also Polomski,* 344 Md. at 77–78, 684 A.2d 1338. The Act was again amended in 1951 to provide that all occupational diseases were compensable, provided that a claimant could establish a nexus between the disease and his or her employment. 1951 Laws of Md., Chap. 287 § 22(a).[9]

---

7. "Occupational diseases ... differ significantly from work-related traumatic injuries." Junius C. McElveen, Jr. and Lawrence P. Postol, *Compensating Occupational Disease Victims under the Longshoremen's and Harbor Workers' Compensation Act,* 32 AM. U.L.REV. 717, 719 (1983). "Although some states maintain lists of occupational diseases, all fifty states have general occupational disease coverage[.]" *Gencarelle v. Gen. Dynamics Corp.,* 892 F.2d 173, 177 n. 2 (2d Cir.1989) (citation omitted).

8. In *Mayor & City Council of Baltimore City v. Ernest Johnson,* 156 Md.App. 569, 586, 847 A.2d 1190 (2004), *aff'd,* 387 Md. 1, 874 A.2d 439 (2005), this Court noted that Maryland was the first state to enact a worker's compensation statute, and cited to an enactment in 1902 to create: "a Co-operative Insurance Fund, to be maintained by both employers and employes in certain perilous occupations, such as mining, quarrying, railroading, building and excavating[.]" 1902 Laws of Md., Chap. 139. *See Harris v. Bd. of Educ.,* 375 Md. 21, 28, 825 A.2d 365 (2003).

9. The amendment provided:
 22. (a) Where an employee of an employer subject to this Article suffers from an occupational disease, [as hereinbefore listed,] and is

Section 9–502 of the Labor and Employment Article sets forth the compensation provisions for occupational diseases. LE §§ 9–502(a)–(d) provide:

(a) In this section, "disablement" means the event of a covered employee becoming partially or totally incapacitated:

(1) because of an occupational disease; and

(2) from performing the work of the covered employee in the last occupation in which the covered employee was injuriously exposed to the hazards of the occupational disease.

(b) Subsection (c) of this section applies only to:

(1) the employer in whose employment the covered employee was last injuriously exposed to the hazards of the occupational disease; and

(2) the insurer liable for the risk when the covered employee, while employed by the employer, was last injuriously exposed to the hazards of the occupational disease.

(c) Subject to subsection (d) of this section and except as otherwise provided, an employer and insurer to whom this subsection applies shall provide compensation in accordance with this title to:

(1) a covered employee of the employer for disability of the covered employee resulting from an occupational disease; or

---

thereby disabled from performing his work in the last occupation in which he was injuriously exposed to the hazards of such disease, or dies as a result of such disease, and the disease was due to the nature of [an] the occupation or process, [described in Section 21 hereof,] in which he was employed within the period previous to his disablement as limited in Sections 23 and 24 hereof, the employee, or, in case of his death, his dependents shall be entitled to compensation in the amount and payable in the manner provided elsewhere in this Article, as if such disablement or death were an injury by accident, except as otherwise provided in Sections [21] 22 to 30 hereof; and the practice and procedure prescribed elsewhere in this Article shall apply to proceedings for compensation for such diseases, except as in said Sections [21] 22 to 30, and Sections 53, 57 and 67, as hereby amended, otherwise provided.

1951 Laws of Md., Chap. 287, § 22(a).

(2) the dependents of the covered employee for death of the covered employee resulting from an occupational disease.

(d) An employer and insurer are liable to provide compensation under subsection (c) of this section only if:

(1) the occupational disease that caused the death or disability:

(i) is due to the nature of an employment in which hazards of the occupational disease exist and the covered employee was employed before the date of disablement; or

(ii) has manifestations that are consistent with those known to result from exposure to a biological, chemical, or physical agent that is attributable to the type of employment in which the covered employee was employed before the date of disablement; and

(2) on the weight of the evidence, it reasonably may be concluded that the occupational disease was incurred as a result of the employment of the covered employee.

In *Polomski,* the Court of Appeals observed that the General Assembly in 1971 addressed the need for legislation that accounted for increased risks from occupational disease for certain public employees—initially fire fighters—who faced especial hazards due to the risks and demands of their profession:

A little more than three decades after its formal recognition of occupational diseases, the General Assembly turned its attention to certain fire fighters, concluding that they were susceptible to diseases formerly not recognized as occupational. *See Board of County Comm'rs for Prince George's County v. Colgan,* 274 Md. 193, 208, 334 A.2d 89, 97 (1975)(holding that the Legislature may properly determine that fire fighters are exposed to health hazards not shared by other government employees); *Soper [v. Montgomery County,]* supra, 294 Md. [331] at 335–36, 449 A.2d [1158] at 1160 [ (1982) ]. By Chapter 695 of the Acts of 1971, the Legislature amended the Act and granted a

presumption of compensability in favor of certain classes of fire fighters suffering from heart or lung disease, or hypertension. . . . The amendment was first codified as Md.Code (1957, 1971 Cum.Supp.), Article 101, § 64A. In 1972, the scope of § 64A was expanded to include certain police officers as well, Ch. 282 of the Acts of 1972, and is currently codified and amended as § 9–503(a)–(b).

*Polomski,* 344 Md. at 78, 684 A.2d 1338. In its present form, LE § 9–503(a) thus accords "special treatment to employees in particular professions" who are afflicted with certain enumerated occupational diseases by creating a presumption of compensability for workers such as firefighters, police officers and other employees in certain occupations.[10] *See [Ernest] Johnson v. Mayor & City Council of Baltimore City,* 387 Md. 1, 15, 874 A.2d 439 (2005).

■■ Of particular relevance, LE § 9–503(a) provides:

(a) A paid firefighter, paid fire fighting instructor, or sworn member of the Office of the State Fire Marshal employed by an airport authority, a county, a fire control district, a municipality, or the State or a volunteer firefighter, volunteer fire fighting instructor, volunteer rescue squad member, or volunteer advanced life support unit member who is a covered employee under § 9–234 of this title is presumed to have an occupational disease that was suffered in the line of duty and is compensable under this title if:

(1) the individual has heart disease, hypertension, or lung disease;

(2) the heart disease, hypertension, or lung disease results in partial or total disability or death; and

(3) in the case of a volunteer firefighter, volunteer fire fighting instructor, volunteer rescue squad member, or volunteer advanced life support unit member, the individ-

---

**10.** The Court of Appeals has pointed out with respect to the predecessor to LE § 9–503 that the provision "is reflective of a social policy affording preferential treatment to fire fighters disabled by [occupational disease]." *Montgomery County Fire Bd. v. Fisher,* 298 Md. 245, 257, 468 A.2d 625 (1983).

ual has met a suitable standard of physical examination before becoming a firefighter, fire fighting instructor, rescue squad member, or advanced life support unit member.

Md.Code (1991, 2008 Repl.Vol., 2009 Supp.), § 9–503(a) of the Labor & Employment Article. The offset provision at LE § 9–503(e) in turn now permits the recovery of dual benefits, subject to the amount capped by the employee's weekly salary, as follows:

(e)(1) Except as provided in paragraph (2) of this subsection, any paid firefighter ... who is eligible for benefits under subsection (a), (b), (c), or (d) of this section *or the dependents of those individuals* shall receive the benefits in addition to any benefits that the individual or the dependents of the individual are entitled to receive under the retirement system in which the individual was a participant at the time of the claim.

(2) The benefits received under this title shall be adjusted so that the weekly total of those benefits and retirement benefits does not exceed the weekly salary that was paid to the ... firefighter[.]

LE § 9–503(e) (emphasis added). The emphasized language reflects an amendment to Section 9–503(e) that extends the dual recovery to qualified surviving dependents. *See* 2007 Md. Laws, Chaps. 350, 351. This is the measure of recovery that has been sought by claimant in the case before us, and had been claimed unsuccessfully by Mrs. Ernest Johnson in 2005. We first review the decisions from this Court and the Court of Appeals in *Ernest Johnson v. Mayor & City Council* that provide a context for claimant's attempt to recover dual benefits subject only to the LE § 9–503(e)(2) offset.

### Ernest Johnson v. Mayor & City Council of Baltimore City

Ernest Johnson (no relation to the firefighter in the case before us), had served as a Baltimore City firefighter for thirty-two years. He was diagnosed with colon cancer, and died from that disease on March 11, 1994. There was no

dispute that his illness constituted an occupational disease, or that Mrs. Ernest Johnson was a wholly dependent survivor. She began receiving a service pension benefit from the City. She also filed a claim for survivor's benefits under the Worker's Compensation Act. Both the Workers' Compensation Commission and the circuit court concluded that Mrs. Johnson was entitled to both the pension and the compensation benefits, subject to a set-off as provided in LE § 9–503(e)(2), which capped the total weekly recovery in the amount of the firefighter's weekly salary, instead of the dollar-for-dollar offset directed by LE § 9–610, the Act's general offset provision.

■ The City appealed to this Court, which reversed. *Mayor & City Council of Baltimore City v. [Ernest ] Johnson,* 156 Md.App. 569, 847 A.2d 1190 (2004), *aff'd,* 387 Md. 1, 874 A.2d 439 (2005). There, we recognized the "core values" of workers' compensation legislation, as well as the liberal construction required to ascertain a statute's meaning, *id.,* 156 Md.App. at 594, 847 A.2d 1190, but cautioned that we may not "stifle the plain meaning of the Act, or exceed its purposes, [just] so that the injured worker may prevail." *Id.* (citation and internal quotation marks omitted). We further noted that "the Act has a purpose broader than serving the interests of employers and their employees ... The needs and expectations of society, in addition to those of the work force, come into play." *Id.* at 595, 847 A.2d 1190 (citation and internal quotation marks omitted). Even assuming that the General Assembly had inadvertently omitted language offering dual recovery in favor of dependents, we pointed out that, "[w]hen an omission in the language of a statute ... appeared to be the obvious result of inadvertence, a court may not invade the function of the legislature by reading missing language into a statute[.]" [11] *Id.,* 156 Md.App. at 596, 847 A.2d 1190 (citations and internal quotation marks omitted).

---

11. At the time of the decision in *Johnson v. Mayor & City Council of Baltimore,* 387 Md. 1, 874 A.2d 439 (2005), LE § 9–503(e) provided:

(e)(1) Except as provided in paragraph (2) of this subsection, any paid firefighter ... who is eligible for benefits under subsection (a),

The Court of Appeals affirmed. In so doing, the Court emphasized that a court may not "assume authority to read into the Act what the Legislature apparently deliberately left out." [*Ernest* ] *Johnson,* 387 Md. at 14, 874 A.2d 439. In ruling that the language of LE § 9–503(e) of the Act as written was unambiguous, and that there was no basis to conclude that the dependents of deceased firefighters would be entitled to dual benefits, the Court explained:

The "preferential treatment" for firefighters . . . does not pertain to the provision for dual benefits found in § 9–503(e). . . . The dependents of deceased firefighters, along with living firefighters, are entitled to that statutory presumption of compensability if the firefighters suffer from one of the diseases mentioned in § 9–503.

That does not mean, however, that the dependents of deceased firefighters are entitled to the dual benefits provided to firefighters and others by § 9–503(e). As previously noted, § 9–503(e) does not mention dependents. The language in that section reads as if the Legislature intended to provide benefits to firefighters and (other public safety employees) who are living but unable to work as a result of their occupational diseases.

* * *

---

(b), (c), or (d) of this section shall receive the benefits in addition to any benefits that the individual or the dependents of the individual are entitled to receive under the retirement system in which the individual was a participant at the time of the claim.

(2) The benefits received under this title shall be adjusted so that the weekly total of those benefits and retirement benefits does not exceed the weekly salary that was paid to the ... firefighter[.] Md.Code (1991, 1999 Repl.Vol.), § 9–503(e) of the Labor and Employment Article. Notwithstanding suggestions that dual recovery for qualifying dependents had been authorized by § 9–503(e) prior to the 2007 Amendments, we view the *Johnson* Court's holding to the contrary to be conclusive. We hasten to note that we would not construe a legislative amendment as overruling the Court of Appeals' holding in *Johnson*. *See Langston v. Riffe*, 359 Md. 396, 412 n. 6, 754 A.2d 389 (2000). That implicates an issue of separation of powers. Nonetheless, the General Assembly may enact curative legislation that corrects a perceived failing in a statute or "enact certain legislation that negates the holding it perceives to be objectionable, as to other cases." *Id.*

The statute in the instant case is not ambiguous. Moreover, even if it were, a review of the treatment of dependents throughout the Act would lead to the same result. In the present case, there is no limited restriction on benefits that implies a general entitlement to benefits. Rather, there is a general restriction on collecting dual benefits (§ 9–610) and a limited exception for certain public safety workers suffering from particular occupational diseases (§ 9–503).

*Johnson,* 387 Md. at 15–16, 19, 874 A.2d 439 (footnotes omitted).

### Amended LE § 9–503(e)

Clearly aggrieved by the Court of Appeals' decision in *Ernest Johnson,* the General Assembly sought to remedy what was viewed as a defect in the current law, and amended LE § 9–503(e) to include surviving dependents of the enumerated public employees so they, too, would be entitled to benefit from the offset afforded by LE § 9–503(e). 2007 Md. Laws, Chaps. 350, 351. The title clauses for Senate Bill 752 and House Bill 1117 explained that the General Assembly was amending LE § 9–503(e):

FOR the purpose of clarifying that surviving dependents of certain individuals are eligible to receive the same workers' compensation benefits as the individual received at the time of death; and generally relating to workers' compensation benefits for dependents.

The temporal reach of the amended version of LE § 9–503(e) lies at the heart of this appeal. If the current Statute applies, then claimant is entitled to dual recovery of her survivor's benefits under the Act as well as the employee's service pension. If the amendment is not applied retroactively, the instant claim is covered by the statute in force at the time of the employee's death. In that instance, claimant's recovery would be subject to the general offset provision found at LE § 9–610.

### Statutory Interpretation

To determine the meaning and application of a statute, we must adhere to the "cardinal rule of statutory

interpretation," which dictates that we "ascertain and effectuate the intention of the legislature." *Chesek v. Jones, ante,* 406 Md. 446, 458, 959 A.2d 795 (2008) (citation and internal quotation marks omitted). "[O]ur primary goal is always 'to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision' . . . We begin our analysis by first looking to the normal, plain meaning of the language of the statute. . . ." *Montgomery County Volunteer Fire–Rescue Ass'n v. Montgomery County Bd. of Elections,* 418 Md. 463, 471, 15 A.3d 798 (2011) (citation omitted). Where the language is "clear and unambiguous and express[es] a plain meaning," we effectuate the provision as written. *See Chesek,* 406 Md. at 459, 959 A.2d 795 (quoting *WFS Financial, Inc. v. Mayor & City Council of Baltimore,* 402 Md. 1, 13, 935 A.2d 385 (2007)).

### An Amendment's Temporal Reach— The Issue of Retroactivity

 This appeal requires a corollary inquiry into whether the Legislature intended the statutory provision at issue to have retroactive effect. "Generally speaking, [t]he legislative function is principally concerned with the establishment of future rules of conduct." *Doe v. Roe,* 419 Md. 687, 699, 20 A.3d 787 (2011) (citation and internal quotation marks omitted). It has been long established that there exists

> a general presumption in the law that an enactment is intended to have purely prospective effect. In the absence of clear legislative intent to the contrary, a statute is not given retrospective effect. . . . In examining both the statutory language and the legislative history, this presumption must be considered to determine whether there are sufficient indicia of a contrary legislative intent.

*Traore v. State,* 290 Md. 585, 593, 431 A.2d 96 (1981) (citations omitted).[12] Indeed, "the presumption against retroactive leg-

---

12. Claimant contends, in her brief, that "[w]hen the Legislature intends prospective application, it so states." This turns the presumption

islation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Products*, 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). The "rationale underlying the general rule provides that retrospective application, which attempts to determine the legal significance of acts that occurred prior to the statute's effective date, increases the potential for interference with persons' substantive rights." *WSSC v. Riverdale Heights Fire Co.*, 308 Md. 556, 561, 520 A.2d 1319 (1987).

The Court's decision in *Langston v. Riffe*, 359 Md. 396, 754 A.2d 389 (2000) is instructive. In that case, the Court confronted the issue of retroactive legislation in the context of three paternity actions. Two men who had been adjudged to be fathers sought to obtain blood or genetic testing in the hope of overturning declarations of paternity. The men sought relief under Section 5–1038 of the Family Law Article, as amended subsequent to their paternity adjudications. Md. Code (1984, 1991 Repl.Vol., 1995 Supp.), § 5–1038(a)(2)(i)2 of the Family Law Article ("FL"). In short, application of the amended FL § 5–1038(a)(2)(i)2 would permit the men to challenge the adjudication of paternity on the basis of a blood or genetic test that would exclude them as the father. Notwithstanding the logic of their position, the attempts by the adjudicated fathers met with some resistance. The principal stumbling block to the use of new technology, either to ascertain the true father or rule out someone who clearly was not, was the fact that the operative amendments came after

---

against retroactive application of an amendment on its head. The Court's decision in *Roth v. Dimensions Health Corp.*, 332 Md. 627, 632 A.2d 1170 (1993) lends claimant no assistance. In *Roth*, the United States Court of Appeals for the Fourth Circuit had asked our Court of Appeals to answer a certified question relating to the limitations period within which a medical malpractice plaintiff was required to file a certificate of a qualified expert. *See* Md.Code (1974, 1984 Repl.Vol., 1987 Supp.), § 3–2A–04(b) of the Courts & Judicial Proceedings Article. At issue was whether an amended version of the statute applied. The Court held that changes to the statute were retroactive. The change in the limitations period was "procedural," and would be "given retroactive application." *Id.*, 332 Md. at 636, 632 A.2d 1170. The amended statute in the case before us is not merely a matter of procedure.

their paternity adjudications. The mothers asserted that stringent rules governing the revisory authority of the trial courts were to apply. They argued for the application of stringent revisory procedures pursuant to Md. Rule 2–535 that would constrain a circuit court's authority to revise an adjudication of paternity. This had been the holding of the Court in *Tandra S. v. Tyrone W.*, 336 Md. 303, 648 A.2d 439 (1994), the case which prompted the General Assembly to act.

A majority of the Court of Appeals in *Langston* ruled that the amendment to FL § 5–1038(a)(2)(i)2 should apply retroactively to afford relief to the adjudicated fathers, who were thus given the opportunity to rule out their paternity. Instead of the strict revisory rule set forth in Md. Rule 2–535 with its restrictive time constraints, FL § 5–1038(a)(2)(i)2 afforded access to a post-declaration blood or genetic test. The Court concluded that the General Assembly, in amending the statute, sought to negate the effects of the *Tandra S.* decision. Mindful of the presumption that amended statutes would be limited to prospective effect, the Court determined that the amendment was remedial and that it was aimed at all paternity claims and declarations. The legislative history of FL § 5–1038(a)(2)(i)2 likewise showed the Legislature's concern with the *Tandra S.* decision and its implications. The Court explained that, "[c]learly, the perceived injustices to putative fathers in situations similar to the putative fathers in the *Tandra S.* case could not be remedied by legislation with a strictly prospective effect." *Langston*, 359 Md. at 412, 754 A.2d 389 (footnote omitted). The *Langston* majority concluded:

> We hold that the extensive legislative history in this case indicates that, in enacting Chapter 248, the General Assembly intended the Act to be remedial in nature. As the Court of Special Appeals pointed out below, Chapter 248 "is remedial in that it is an expansion of the equitable grounds on which a court may relieve from the effect of a paternity judgment an adjudged father who later has been determined not to be the biological father of the child in question." ... More simply, it is procedural and remedial in

that it relieves putative fathers from the effects of the *Tandra S.* opinion by expanding the procedure for remedying the perceived problem. In this case, it is appropriate to apply section 5-1038 retrospectively, due to the Legislature's clear intent to restore that provision to its originally intended purpose by providing putative fathers with an additional procedure or remedy to challenge prior paternity declarations.

*Langston,* 359 Md. at 417-18, 754 A.2d 389 (citation omitted).

Although we recite the facts in *Langston* at length, we also conclude that *Langston* is inapt. The remedies and prudential underlay in that case bear little resemblance to the legislative relief fashioned in LE § 9-503(e). While the value of that decision is the exposition of the applicable law, the facts before us part company with those before the Court in that case because the legislative relief sought for the adjudicated fathers was "procedural and remedial," while the amendments to LE § 9-503(e) are, at bottom, substantive. To place more focus on our inquiry, we turn to an exposition of relevant law as set forth by Judge Wilner, writing for the Court of Appeals:

We have, over the years, stated a number of rules regarding the application of statutes to events that occurred prior to their effective date, and, although we have generally applied those rules consistently, we have not always been consistent in articulating them. In *WSSC v. Riverdale Heights Fire Co.,* 308 Md. 556, 563-64, 520 A.2d 1319, 1323 (1987), we confirmed four basic principles of Maryland law: (1) statutes are presumed to operate prospectively unless a contrary intent appears; (2) a statute governing procedure or remedy will be applied to cases pending in court when the statute becomes effective; (3) a statute will be given retroactive effect if that is the legislative intent; but (4) even if intended to apply retroactively, a statute will not be given that effect if it would impair vested rights, deny due process, or violate the prohibition against *ex post facto* laws. We have restated several of those principles in subsequent cases, and they remain the framework for analysis.

When an issue is raised regarding whether a statute may be given retroactive effect, we engage in a two-part analysis. First, we must determine whether the Legislature intended the statute to have the kind of retroactive effect that is asserted. That implicates the first and third principles. Applying the presumption of prospectivity, a statute will be found to operate retroactively only when the Legislature "clearly expresses an intent that the statute apply retroactively." *Waters v. Montgomery County, supra,* 337 Md. [15] at 28, 650 A.2d [712] at 718 [ (1994) ]. The issue of intent sometimes becomes clouded when, as here, a statute can be regarded as being prospective in one sense and retroactive in another. As noted in *State Comm'n on Human Rel. v. Amecom Div. [of Litton Sys.]*, 278 Md. 120, 123, 360 A.2d 1, 3–4 (1976), "a statute, though applied only in legal proceedings subsequent to its effective date and in that sense, at least, prospective, is, when applied so as to determine the legal significance of acts or events that occurred prior to its effective date, applied retroactively." Context becomes important.

If we conclude that the Legislature *did* intend for the statute to have retroactive effect, we must then examine whether such effect would contravene some Constitutional right or prohibition. That implicates the second and fourth principles.

*Allstate Ins. Co. v. Kim,* 376 Md. 276, 289–90, 829 A.2d 611 (2003). *See generally, Pautsch v. Maryland Real Estate Comm'n,* 423 Md. 229, 263–64, 31 A.3d 489 (2011).

 Claimant emphasizes that two of the basic principles apply to this case, the second and third, and that their application dictates a retroactive application of LE § 9–503(e). To reiterate, the four principles announced in *Kim* and prior cases are

(1) statutes are presumed to operate prospectively unless a contrary intent appears; (2) a statute governing procedure or remedy will be applied to cases pending in court when the statute becomes effective; (3) a statute will be given

retroactive effect if that is the legislative intent; but (4) even if intended to apply retroactively, a statute will not be given that effect if it would impair vested rights, deny due process, or violate the prohibition against *ex post facto* laws. *Kim,* 376 Md. at 289, 829 A.2d 611. The first principle is always in play in a case such as this. The default presumption is that an amendment is forward-looking. Claimant also makes much of the fact that the Workers' Compensation Act is a remedial statute, and avers that the amendments to LE § 9–503(e) must be judged in this context. To be sure, that is the special nature of such legislation. Nevertheless, the fact that the statute is remedial is not dispositive where other interests are at work, viz., substantive or vested rights that are affected by a change in the law. The amendment to LE § 9–503(e) is not procedural, and while respectful of the general remedial nature of workers' compensation legislation and, further assuming that the General Assembly sought to remedy what was considered a "defect" in the existing law, we decline claimant's invitation to accept the retroactive temporal reach of the amended LE § 9–503(e). Although claimant's argument that the amendment to the Act is a remedial measure, her contention lacks sufficient force.

 We may even assume that, absent clear language to that effect in the amendment, the General Assembly intended a retroactive application of the amendment to LE § 9–503(e). We recognize that there is language in both legislative bills that amended LE § 9–503 to suggest that the General Assembly thought that the prior version of LE § 9–503(e) authorized dual benefits to wholly dependent survivors such as the claimant before us. The title clause for each bill, Senate Bill 752 and House Bill 1117, states that the amendments were proposed "[for] the purpose of *clarifying* that surviving dependents of certain individuals are eligible to receive the same workers' compensation benefits as the individual received at the time of death[.]" In *Chesek v. Jones,* the Court noted that the use of the term "clarifying" in the purpose clause of a bill would be one factor in legislative interpretation. *Chesek,* 406 Md. at 462, 959 A.2d 795. Certainly, there is authority from

sister jurisdictions to the effect that a "clarifying" statute merely pronounces what has always been the law. *See, e.g., In re Marriage of Fellows,* 39 Cal.4th 179, 46 Cal.Rptr.3d 49, 138 P.3d 200, 202 (2006). We are likewise mindful of expectations by legislators that are consistent with this view, and suggestions that, in practice, wholly dependent survivors had always been granted dual benefits. This is the manner of legislative debate and comment that is relevant to ascertaining legislative intent when other interpretive tools fall short, because legislative testimony that is well taken and remarks by legislators themselves shed light on the intent behind a proposed enactment. *See Toft v. State of Nevada ex rel. Pimentel,* 108 Md.App. 206, 216, 671 A.2d 99 (1996). Yet, the Court of Appeals' decision in *Johnson* is conclusive—LE § 9–503(e), the law in effect prior to the 2007 Amendments did not authorize dual benefits such as are sought in the case before us.

> ... *even if intended to apply retroactively, a statute will not be given that effect if it would impair vested rights, deny due process, or violate the prohibition against ex post facto laws.*

▮ Assuming that the General Assembly sought to endow LE § 9–503(e) with the temporal reach that claimant seeks, the inquiry does not end with a finding of legislative intent. *Langston,* 359 Md. at 418, 754 A.2d 389. This implicates the fourth principle set forth in *Kim* and related cases *viz.,* "a statute will not be given that effect if it would impair vested rights, deny due process, or violate the prohibition against *ex post facto* laws." The Court has observed that "a remedial or procedural statute may not be applied retroactively if it will interfere with vested or substantive rights." *Langston,* 359 Md. at 418, 754 A.2d 389. In *John Deere Constr. & Forestry Co. v. Reliable Tractor, Inc.,* 406 Md. 139, 957 A.2d 595 (2008), the Court, drawing from the Supreme Court's analysis in *Landgraf,* defined retroactive application as "one that 'would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'" *John Deere,* 406

Md. at 147, 957 A.2d 595 (quoting *Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483).

Notwithstanding legislative recognition of a "custom" prior to the Court's decision in [*Ernest* ] *Johnson,* the operative fact is that an enlarged class of persons is eligible to receive benefits not lawfully available to it prior to the 2007 amendments. We consider the decision by the Arkansas Court of Appeals in *Clevenger v. City of Jonesboro,* 2011 Ark.App. 579, 2011 WL 4585587 (2011), to be instructive. Clevenger, a retired firefighter, appealed from a decision by the Arkansas Workers' Compensation Commission ruling that the City of Jonesboro was entitled to an offset against his retirement disability benefits. At the time of Clevenger's injury, which ultimately resulted in his disability retirement, a provision of the Arkansas statute provided for a dollar-for-dollar reduction in an injured worker's benefits where the injured worker had previously received similar payments from other sources. *See* Ark.Code Ann. § 11–9–411(a)(2) (2008). The Arkansas legislature in 2009 amended the relevant provision to eliminate the setoff in certain instances and Clevenger asserted that the amended statute would have a retroactive effect and apply to his case to afford him relief from the setoff.

An administrative law judge ruled in Clevenger's favor, but the Commission reversed. The intermediate appellate court sided with the City on appeal and affirmed. The Court rejected Clevenger's complaint that the Commission erred by ruling that the statute was substantive and would not have retrospective application. The Court's rationale is relevant and merits extensive quotation:

> Clevenger concedes that section 11–9–411(a)(2) contains no language to suggest retroactivity; however, he relies on the holding of *Archer* [*v. Sisters of Mercy Health Sys.,* 375 Ark. 523, 294 S.W.3d 414 (2009) ] and attempts to draw a parallel that, like in *Archer,* and [sic] retroactive application is appropriate because the amendment alters only the City's available recovery remedies, not its vested rights. Indeed, in *Archer,* our supreme court concluded that the direct-action statute—the subject of its review—did not create a

new cause of action, because the negligence cause of action was firmly grounded in our state's common law and was regulated by statute. *Id.* at 529, 294 S.W.3d at 418. The court went on to note that *merely the remedy for recovery had changed, not the underlying right to recover. Id.* at 529, 294 S.W.3d at 418. Thus, there is a notable distinction between the case presently at bar and the *Archer* precedent—the underlying "cause of action" remained constant in *Archer,* the only thing that changed was the potential tortfeasors.

Here, prior to 2009, the employer had a vested right to a setoff, yet after the amendment that right was obliterated. Our case law directs that any changes in statutes relating to vested rights are characterized as substantive and require application of the law as it existed at the time the claimant sustained a compensable injury. *Ark. State Police v. Welch,* 28 Ark.App. 234, 772 S.W.2d 620 (1989). A vested right exists when the law declares that one has a claim, or that one may resist enforcement of a claim.

\* \* \*

The statutory amendment at issue in this case deals not with the procedure for enforcing a remedy provided under the Workers' Compensation Act, but rather with the substance of the remedy itself, *i.e.,* entitlement to retirement disability benefits. Before section (a)(2) was enacted, a claimant had no vested right to retirement disability benefits that had already been paid by other parties, and the employer had a vested right to a full setoff for those amounts. When section (a)(2) was enacted, it created a new vested right for injured workers and *altered that of employers.* Accordingly, because the statute is substantive and therefore cannot be applied retroactively to cover Clevenger's injury, the decision of the Commission is supported by substantial evidence, and we affirm.

*Clevenger,* 2011 Ark.App. 579 at ¶ 4–5 (emphasis added).

The decision by the Minnesota Supreme Court in *Yaeger v. Delano Granite Works,* 250 Minn. 303, 84 N.W.2d 363 (1957),

is likewise instructive. An amendment to Minnesota's workers' compensation statute changed the source of additional compensation payments from a special compensation fund and imposed that obligation on employers and their carriers. The court held on constitutional grounds that the amendment would not apply, and explained:

> Where, as here, the liability of the employers and insurers has been fixed ... their vested right in such determined liability may not be destroyed by legislation which imposes a new obligation or an additional liability.... In these cases the statute imposed a new obligation on the employer and insurer in that they were made liable for the payment of ... additional ... compensation.

*Yaeger,* 84 N.W.2d at 366 (citations omitted). In *Tedford v. Workforce Safety & Ins.,* 738 N.W.2d 29 (N.D.2007), the WSI had been offsetting the claimant's federal social security retirement against his disability, pursuant to a statute that had been enacted subsequent to the date that he was determined to be totally disabled. The North Dakota Supreme Court ruled that the statute did not apply. The court explained:

> [A]n injured claimant receiving total disability benefits prior to enactment of a statutory retirement offset ... has a reliance interest in ... continued disability benefits.... Statutory amendments may not operate retrospectively to abrogate or change WSI's obligation to pay benefits.

*Tedford,* 738 N.W.2d at 34. *Cf. Stonesifer v. State,* 34 Md. App. 519, 524, 368 A.2d 492 (1977) (whether injured claimant entitled to recover under two compensation plans a question of substantive right). *See Riley v. W.C.A.B.,* 997 A.2d 382, 389 (Pa.Cmwlth.2010) (substantive right implicated when retroactive application of statute imposes new legal burdens on past transaction). *See also, e.g., Hayes v. New Orleans Voodoo Football, Inc.,* 985 So.2d 259, 264–65 (La.App. 5 Cir.2008) (application of pre-amendment statute that directed offset of benefits).

In the final analysis, we conclude that the 2007 amendment to LE § 9–503(e) may not be applied retrospectively. The

change in LE § 9–503(e) was intended by the General Assembly to address the Court's decision in *Johnson* and to clarify the law to provide for dual benefits to the surviving dependents of certain public employees who are presumed to have died because of their occupational disease. There is no clear directive from the General Assembly that the amendment should apply retrospectively. The amendment has an adverse impact on the size of the class of eligible claimants who would benefit, and this effects a substantive change in the "legal landscape" and enlarges the obligations of public employers. The amended law creates an "obligation" that the employer had not previously been required to meet. *See Layton v. Howard County Bd. of Appeals,* 399 Md. 36, 48, 922 A.2d 576 (2007).

### *Postscript*

Claimant points out that, according to the legislative history, the financial impact on the State would be negligible. Yet, the impact from retroactive application of LE § 9–503(e) would not only be borne by the State, but by local governments. It is thus not clear that the impact of the new law on municipal and county employers such as the City of Baltimore would be *de minimus,* as claimant suggests.

We are also mindful of the Court's decision in *Janda v. General Motors Corp.,* 237 Md. 161, 205 A.2d 228 (1964). The Court stated "[v]arious rules [that] have been formulated by the courts to aid in determining whether a statute is to be applied retrospectively or prospectively[ ]":

(1) "Ordinarily a change affecting procedure only, and not substantive rights, made by statute (and an amendment of the Maryland Rules has essentially the same effect) applies to all actions[. . . .] (2) Ordinarily a statute affecting matters or rights of substance will not be given a retrospective operation as to transactions, matters and events not in litigation at the time the statute takes effect:

" * * * unless its words are so clear, strong and imperative in their retrospective expression that no other meaning can be attached to them, or unless the manifest

intention of the Legislature could not otherwise be gratified. * * * (citing cases). An amendatory Act takes effect, like any other legislative enactment, only from the time of its passage, and has no application to prior transactions, unless an intent to the contrary is expressed in the Act or clearly implied from its provisions." *Tax Comm. v. Power Company,* 182 Md. 111, 117 [32 A.2d 382 (1943)].

* * *

(4) A statute which affects or controls a matter still in litigation when it became law will be applied by the court reviewing the case at the time the statute takes effect although it was not yet law when the decision appealed from was rendered, even if matters or claims of substance (not constitutionally protected), as distinguished from matters procedural or those affecting the remedy are involved, unless the Legislature intended the contrary.

*Janda,* 237 Md. at 168–69, 205 A.2d 228. The fourth rule, which would direct the application of a statutory change to pending cases, was specifically disapproved in *WSSC v. Riverdale Heights Fire Co., ante,* 308 Md. at 565, 520 A.2d 1319. *See generally, Layton v. Howard County Bd. of Appeals,* 399 Md. 36, 63–64, 922 A.2d 576 (2007) (discussing continued authority of *Janda* and *Yorkdale Corp. v. Powell,* 237 Md. 121, 205 A.2d 269 (1964) in the context of zoning and land use— holding that changes in zoning law applied retroactively).

The amendments to LE § 9-503(e), as to the instant claim, do not apply.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED.**

**EACH PARTY TO BEAR ITS OWN COSTS.**